## *In re* WIDENING OF FULTON STREET.

1. EMINENT DOMAIN—AMOUNT NECESSARY TO WIDEN STREET WITHIN DISCRETION OF CONDEMNER.
   Amount of land to be taken for purpose of widening city street is, to large extent, within discretion of condemner.

2. HIGHWAYS AND STREETS—REGULATION OF PARKING VEHICLES—
POLICE POWER.

> Regulation of use of highways for parking vehicles is matter for
> exercise of police power, with which, in absence of abuse,
> courts should not interfere.

3. EMINENT DOMAIN—WIDENING STREET FOR PARKING PURPOSES
PROPER.

> Use of highways for parking vehicles is proper, and if necessity
> therefor exists, right of eminent domain may be exercised to
> establish or widen highways adequate for this purpose; taking
> of land for highways not being limited to that necessary for
> actual travel.

4. SAME—TAKING FRONT OF LOTS—MEASURE OF DAMAGES.

> In condemnation proceedings, where front 16 feet of defendants'
> lots were taken for widening street, their claim that they
> should be paid as damages fair market value obtainable there-
> for by its sale as parcel separated from remaining portion
> cannot be sustained, since remaining portion is not thereby de-
> prived of advantages of fronting on street as would be case if
> sale were made to private individual.

5. SAME—MEASURE OF DAMAGES WHERE ONLY PART OF PARCEL
TAKEN.

> Where only part of parcel is taken in condemnation proceedings,
> just compensation is not measured by proportionate acreage,
> but by amount to which value of property from which it is
> taken is diminished.

6. SAME—WHERE PART OF BUILDING TAKEN—MEASURE OF DAMAGES
—INSTRUCTIONS NOT ERRONEOUS.

> Where widening city street necessitated removal of porch of one
> property, and removal of porch and front wall of another, ex-
> clusion of testimony offered to show cost of moving buildings
> back from street line was not prejudicial error, in view of in-
> struction by court that in determining amount of damages
> jury must either consider remainder worthless and allow value
> of whole building, or consider what can be done with remainder
> and cost of doing it.

7. SAME—DAMAGES AWARDED SHOULD NOT BE SET ASIDE UNDER
EVIDENCE.

> Where there was clear conflict of testimony as to depreciation in
> value of buildings, caused by widening street, and court cor-

rectly informed defendants' counsel that they would be entitled to any damages proven, but no definite testimony of this character was given, award of jury should not be set aside, on review.

Appeal from Superior Court of Grand Rapids; Verdier (Leonard D.), J. Submitted June 4, 1929. (Docket No. 35, Calendar No. 34,312.) Decided September 4, 1929. Rehearing denied December 3, 1929.

Condemnation proceedings by the city of Grand Rapids against Louis Barth and others. From the award to defendants, they appeal. Affirmed.

*J. T.* and *T. F. McAllister* and *Steketee & Steketee,* for appellants.

*Ganson Taggart* and *Fred N. Searl* (*Stuart Knappen,* of counsel), for appellee.

*Trowbridge, Lewis & Watkins, amicus curiæ.*

NORTH, C. J. The city of Grand Rapids has instituted condemnation proceedings incident to acquiring land to be used in widening Fulton street between East Park Place and Barclay avenue. Fulton street is one of the main thoroughfares leading to the business section of Grand Rapids. It is 66 feet wide, and the city proposes to add a 16-foot strip of land on the northerly side, and is planning to reserve a parking lane on each side of the widened street. The defendants are the owners of separate lots approximately 185 feet deep fronting on the northerly side of Fulton street; each parcel is a corner lot and a little over 100 feet in width. The jury impaneled found in favor of the petitioner as to the matter of necessity and awarded damages to Dr. and Mrs. Barth in the sum of $20,917.70, and to

Miss Godfrey $12,348.65. The defendants have appealed from the order of confirmation. While there are 49 assignments of error, the matters in controversy are submitted in appellants' brief under the following heading:

(1) "The city of Grand Rapids has no right to condemn and take defendants' property * * * for the sole purpose of creating parking space thereon.

(2) "The defendants in this case did not receive just compensation for their property, but the rule applied and the amount allowed was in direct violation of the decisions of this court and amounted to a confiscation of defendants' property without just compensation."

Appellants urged in the trial of this case that there was no necessity for taking more than 8 feet of land, which, by reason of the location of their buildings, would result in much less damage to their respective properties than the taking of the front 16 feet. They also insisted that the city did not have the power to take their property to widen a street and thus provide a parking place when by prohibiting or limiting parking the present thoroughfare would be wide enough to accommodate street traffic. We find no justification in this record for disturbing the determination of the jury as to the necessity for this public improvement and of taking 16 feet off of the front of defendants' properties therefor. The amount of land to be taken is, to a large extent, within the discretion of the condemner. *Panfil* v. *City of Detroit*, 246 Mich. 149. In their brief appellants have thus framed and commented on the other question above suggested:

"We have been unable, like the city, to find any direct decision on the question of whether the public can condemn private property for parking space

only.   *   *   *   We respectfully submit that, as a matter of law, this right should not and does not exist."

It does not seem to us that the dearth of adjudicated cases directly in point renders the rule of law obscure or doubtful.  From the day of the oxcart there have been maintained in the public highways hitching posts and rails by which provision was made for the leaving of animal-drawn vehicles at proper places on public thoroughfares.  The demand of our motor age has greatly increased the necessity for space in the public streets for leaving vehicles.  This right is of importance to the tradesmen along the street as well as to the traveler thereon.  One would hardly have the temerity to question that such a use is a lawful use of the highway.  Its regulation is a matter for the exercise of police power, with which, in the absence of abuse, courts should not interfere.  In the future, this space which the city seeks to add to Fulton street may or may not be used for parking.  The land was taken "for street purposes."  But parking is a proper use of the highway, and if necessity therefor exists, the right of eminent domain may be exercised to establish or widen highways adequate for this purpose.  The taking of the land for highways is not limited to that necessary for actual travel.  *In re City of Detroit,* 227 Mich. 132.

A more important question is presented by defendants' claim that they "did not receive just compensation for their property."  The rule as to the measure of damages adopted by the trial court is clearly stated in his charge to the jury, from which we quote:

"In determining what is a fair compensation to be awarded, you are not to decrease the amount of

your award by the benefit that may accrue to the property of these respondents that is left after the street is widened, nor are you to increase your award by reason of the fact that they will be called upon to pay an assessment for making the improvement. You are simply to award to them the full, fair market price of the value of the land that is taken.    *    *    *

"The measure of damages of the land that is taken is not the value of the 16-foot strip considered by itself alone. The measure of damages is the difference between the value of the property as it now is, with nothing taken, and the property with 16 feet taken from its front, and without taking into consideration any benefit to the property that remains, accruing by reason of the widening of the street. In other words, if the land were now 100 feet deep— which seems to be the figure that has been taken for convenience—and 16 feet of it were taken, the measure of damages would be the difference between the value of the same piece of land with the same street in front of it, not widened, with a depth of 100 feet, and the value of that same land, with the street not widened, with a depth of 84 feet. Now that is the rule of damages.    *    *    *

"As regards the land taken, therefore, if you find that the improvement is a necessary public improvement, you will award to the owners the fair market value of the 16 feet proposed to be taken, and if the value of the remainder of the property is decreased by reason of cutting off the 16 feet, also whatever you may find to be the decrease in the value.

"On some of these parcels there are buildings, and a portion of some of these buildings will have to be removed if the proposed improvement is made. The rule of damages in regard to buildings is as follows: If the portion remaining, after the strip is taken, is of great value, and there can be advantageous reconstruction, rearrangement and new ad-

justment, then the cost of altering the building and all consequential damages because of such alteration, plus the value of the part taken, furnishes the rule for measuring the compensation to be awarded for taking part of the building.

"In determining the amount of damages the jury must either consider the remainder worthless and allow the value of the whole building, or consider what can be done with the remainder and the cost of doing it."

As to the amount of the damages for the land taken, if assessed under the rule adopted by the court, there was not a very material variance in the testimony of the witnesses produced by respective parties; but the appellants claim that they should be paid as damages occasioned by taking the front 16 feet of their respective properties the fair market value obtainable therefor by its sale as a parcel separated from the remaining portion of the property. On this theory testimony was taken which fixed the value of the Barth frontage as high as $40,081, and that of the Godfrey frontage in excess of $46,000. But the rule for which the appellants contend is not the correct rule by which a property owner's damage should be assessed when only a portion of the parcel is taken. The fallacy in appellants' proposed method of fixing the amount of damages lies in overlooking the fact that widening Fulton street does not deprive their properties of frontage on that street, as would a sale of the front 16 feet for private use. They will still have a right of ingress and egress on Fulton street, and their easement as to light and air on that side will still be pertinent to their properties. In perpetuating a frontage on Fulton street the city will preserve the *status quo*. The rights mentioned are not new or additional rights which

will come to these property owners by reason of the widening of Fulton street. They are rights which they had before the street improvement was contemplated and they will have these same rights after its consummation. Hence these rights of the property owners cannot be considered a part of the benefit or improvement incident to the widening of this street for which an assessment may be made against the remaining portion of these properties. But clearly the reservation of these rights is a proper factor to be considered in determining the amount of the damage and in awarding to these property owners "just compensation therefor" according to our constitutional provision. If these defendants sold to a private owner the front 16 feet of their lots, the property rights which they would convey to their grantees would be very different and more valuable than the property rights which the city is attempting to take by condemnation, and just compensation or the fair measure of damages is not the same in the one instance as in the other.

The rule for compensation has been announced by this court as follows:

"Where only a part of a parcel is taken, just compensation is not measured by proportionate acreage but by the amount to which the value of the property from which it is taken is diminished." *Johnstone* v. *Railway Co.*, 245 Mich. 65.

"Adequate compensation is such only as puts the injured party in as good condition as he would have been in if the injury had not been inflicted. It includes the value of the land, or the amount to which the value of the land from which it is taken is depreciated." *Fitzsimons & Galvin, Inc.*, v. *Rogers*, 243 Mich. 649.

The same holding will be found in *Township of Custer* v. *Dawson,* 178 Mich. 367; and in speaking of "fair compensation" in *Grand Rapids, etc., R. Co.* v. *Heisel,* 47 Mich. 393, this court said:

"In the case of land actually taken, it includes its value, or the amount to which the value of the property from which it is taken is depreciated."

In 20 C. J. p. 730, under the heading "Where Part of Tract is Taken," the rule is thus stated:

"The measure of damages is the injury done to the fair market value of the entire tract by the taking of only a part. In other words the owner is entitled to recover the difference between the market value of the entire tract before the taking and the market value of what is left after the taking,"— citing many authorities.

The spirit, as well as the letter, of the rule is set forth in a New York case in the following language:

"The owner whose property is taken for public use is to be justly compensated for damages sustained. He is to be made whole, as well off after the taking as he was before. He should not be awarded compensation in excess of his loss on the basis of an imaginary, unnatural or theoretical subdivision of his property not in fact subdivided, or on a false basis of ownership of one lot in fact a part of a large plot." *In re Fourth Avenue,* 221 App. Div. 458, 223 N. Y. Supp. 525.

In the syllabus (N. Y. Supp.) of this case it is stated:

"Compensation should have been made on the basis of difference between value of plot before and after taking."

This opinion was affirmed by the court of appeals. *In re Fourth Avenue,* 247 N. Y. 569 (161 N. E. 186).

To the same effect, see, also, *Himlar Coal Co.* v. *Kirk,* 224 Ky. 383 (6 S. W. [2d] 480).

Under the rule of compensation asserted by the appellants, they would not only "be made whole," but they would profit rather handsomely at the public's expense. Their own expert witness testified that, after taking the 16 feet off from Dr. Barth's property, the remaining portion (without giving any consideration to benefits from widening) will be worth $146,000. Dr. Barth claims damages in excess of $40,000, thus he would realize from his property $186,000. But his proofs show his property is worth only approximately $156,000. The result in round numbers would be a profit of $30,000 to Dr. Barth. The same method of computation under the proof would give Miss Godfrey $35,000 in excess of the present value of her property as fixed by her own witnesses. Payment of such profits is not required by the statute or the Constitution. On the other hand, by applying the rule contended for by the city, the difference in value before and after the taking as to the Barth property is substantially $10,000, and as to the Godfrey property substantially $11,000. As compensation for taking land from the Barth parcel, the jury awarded $9,317.70, and for that taken from the Godfrey lot $11,109.07. We think this constituted "just compensation."

Appellants assert that error was committed in the ruling of the trial judge by which he excluded testimony offered by them to show the cost of moving back from the street line the building on each of these parcels. The street widening will necessitate the removal of all of the porch from the Godfrey property, and also the removal of the porch and front wall of Dr. Barth's house. The jury awarded $1,239.58 for remodeling or repairing the one, and

$9,500 for the other. In *City of Detroit* v. *Loula,* 227 Mich. 189, this court announced the rule by which damages should be assessed under like circumstances, and that rule was properly followed by the trial judge in his charge to the jury hereinbefore quoted. It need not be held, as it is claimed it was held by the trial judge, under no circumstances could the cost of moving a building become material if offered by the property owner in a case of this character. But the situation in this record is such that if the cost of moving the buildings exceeded the depreciation in value plus the cost of repairing or remodeling, the city was entitled to have the damages minimized and the testimony relative to the cost of moving the buildings became immaterial and irrelevant to the issue to be determined. On the other hand, if the cost of moving these buildings was less than the amount of depreciation plus the expense for remodeling, the property owners have not been prejudiced. No reversible error appears in the application of the rule to the facts in this case.

Complaint is also made by the appellants that no allowance was made by the jury for depreciation in the value of the buildings. There was a clear conflict of testimony on this issue. Appellants' witnesses claimed very substantial depreciation. Witnesses for the city in substance testified that because this locality has changed from a residential to a business section of the city, the value of defendants' buildings fronting on Fulton street when remodeled will not be lessened nearly as much as claimed by the defendants. The court plainly stated to appellants' counsel:

"You are entitled to any damage if you can prove any depreciated value, plus the cost of remodeling."

No definite testimony of this character was given relative to the Barth property. The jurors viewed the premises, and under the record we would not be justified in rejecting their verdict. As hereinbefore indicated, very substantial amounts were awarded to these appellants. We find in the record no prejudicial irregularity in the submission of the issues involved to the jury or any reason for setting aside the verdict as to necessity or the amount of compensation awarded. The order of confirmation is affirmed, with costs to the appellee.

FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred. The late Justice FELLOWS took no part in this decision.