**48**

COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Mitchell CURTIS et al., Appellees.

Court of Appeals of Kentucky.

Dec. 11, 1964.

John J. Breckinridge, Atty. Gen., Wm.
A. Lamkin, Jr., Asst. Atty. Gen., Frank-
fort, L. A. Faurest, Faurest & Collier,
Elizabethtown, Dandridge F. Walton, Madi-
sonville, for appellant.

Clarence Bartlett, Sandidge, Holbrook,
Craig & Hager, Owensboro, for appellees.

STEWART, Judge.

This condemnation proceeding was instituted in the Ohio County Court by the Commonwealth of Kentucky, Department of Highways, against Mitchell Curtis and Inez Curtis, his wife, for the acquisition of land to be used as a right of way in the construction of the Western Kentucky Turnpike.

The commissioners, appointed by the county court, awarded the landowners the aggregate amount of $7170. The Commonwealth appealed, and in circuit court the jury returned a verdict of $1120 for the land taken and $6200 for damages to the remaining land, a total of $7320.

This appeal by the Commonwealth followed. It contends the verdict fails to support the recovery, because it is based upon evidence introduced by the landowners, not for the purpose of estimating compensation for the taking of the land and of fixing damages to the remainder but with the intention of prejudicing the minds of the jury.

The property involved was designated as parcel No. 26 of Section 4–4. One and sixty-six hundreths acres of land were taken from a tract of 16.1 acres for the right of way. The turnpike crosses the land in an east-west direction on an embankment 13 feet high where it enters from the east and 14 feet high where it leaves toward the west. A little over seven acres lie north of the turnpike and about the same amount of land is located to the south of it. All of the improvements, consisting of two houses, two barns and some small buildings, are situated on the north portion. To reach the south tract from the property on which the improvements are located, one is obliged to travel approximately two and a half miles.

The testimony introduced at the trial established the fact that a vein of merchantable coal, four feet and six inches in thickness and some 47 feet 9 inches in depth, underlies the boundary of land condemned for the right of way. Claud Burden, a witness who testified for the landowners, appraised the value of this land at $1200 to $1400 per acre. Burden, who had worked for 15 years in mining coal and had dealt extensively in real estate in Ohio County, testified on direct and cross-examination that he had sold coal land in 1959 comparable to that of the landowners and in the same neighborhood at $1200 per acre. In breaking down this valuation Burden allocated $300 to the surface and $900 to the coal in place beneath it.

The Commonwealth used one appraisal witness whose testimony set a value on the portion condemned for the right of way at $300. This figure was predicated upon the theory that the coal underneath could not be recovered in a safe and economical manner and therefore should not be considered in order to augment the value fixed for the land above; and it produced John Donan, a mining engineer, as an expert witness to substantiate this contention.

Donan testified the coal had only a nominal or token value; it was his opinion it could not be extracted by underground methods because he had been unable to "find any overburden that would support a roof" for such an undertaking. Furthermore, he did not believe the coal could be strip mined according to approved mining practices for the reason that water caught up and standing in an abandoned mine on land adjacent to and lying above the landowners' property would overflow onto it when excavations were made by this type of operation.

Two witnesses for the landowners, Edwin Whitehead and Claud Burden, testified that coal deposits similar to those involved herein had already been strip mined successfully and profitably within four or five hundred feet of the Curtis property; and that, as to the water hazards concerning which Donan testified, their experience had shown them that on nearby land water in considerable quantity had been taken care of

with pumps of suitable capacity or by ditches that would drain it off naturally.

■ Thus, on the issue of whether the coal was feasibly recoverable, the landowners' witnesses counter the evidence given by Donan, the Commonwealth's witness. Therefore, it was for the jury to resolve this point, which they did by finding, we may assume, that the coal could be mined on a paying basis; and we cannot say their finding does not have a factual basis. As to the sum allowed by them for the land taken, namely, $1200 for the one and sixty-six hundreths acres, if the jury had followed completely the value placed on the land by Burden, they would have awarded the landowners $1992. The amount the jury found is certainly not out of line with the estimate given by Burden.

Looking now to the evidence introduced in regard to the damages resulting to the remainder of the land from the construction of the project, the Commonwealth's witness appraised this item at $550. Mitchell Curtis, one of the landowners fixed it at $14,000. The jury awarded $6200, as indicated heretofore. It is argued the Commonwealth's testimony had probative value because it was arrived at in a manner approved by this Court. On the other hand, it is claimed Mitchell Curtis gave no legally acceptable basis to support his statement as to this factor.

This case was tried before the opinions of Commonwealth, Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844, and Commonwealth, Dept. of Highways v. Fister, Ky., 373 S.W.2d 720, were handed down. In the first, decided March 22, 1963, so far as pertinent here, it was held that a jury should not be permitted, after the date mentioned, to fix separately the compensation for the taking and the damages to the remainder in a condemnation action, but the only figure they should be asked to find, as to the land affected, should be the difference in the market value before and after the taking. In the second, decided

October 25, 1963, it was held that the owner of condemned realty, in future cases, could not be presumed adequately qualified to express an opinion as to its market value by reason of ownership alone, but he must establish his qualifications to testify to such an opinion in accordance with the same standards as that required of any other witness.

Stated somewhat differently, prior to the holding adopted in the Sherrod case, it was necessary in a condemnation proceeding to value separately the land condemned and the resulting damages to the remainder, if any. Also, before the Fister case, the rule was that a landowner could express a bare opinion as to either or both of these factors and his testimony would be admissible. See Commonwealth, Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472, 477. The latter case stated that "* * * it is not necessary for a witness to give 'supporting facts' in order to make his estimate of values admissible; the lack of supporting facts affects only the extent to which the probative value of the estimate will go."

■ In the instant case, Mitchell Curtis, the landowner, confined his testimony exclusively to the amount of damages the remainder of his land sustained by the construction of the turnpike. He was the only witness who placed a value on this item in behalf of the landowners. As this proceeding was tried October 29, 1962, his testimony could be confined solely to this element of proof, because the rule set forth in the Tyree case was then in effect in this forum. A reading of his testimony shows he failed to qualify in order to express an opinion as to the damages he said the turnpike caused to his farm. This he was not required to do under the rule prevailing at the time this case was tried.

■ The landowner, when asked how the property he still retains is damaged by the construction of the turnpike, called atten-

tion to the fact that his farm is severed into two almost equal parts; that he is compelled to travel two and a half miles each way in going from one part to the other; and that the farm is hemmed in by the newly constructed turnpike embankment on the south and by the existing Illinois Central Railroad tracks on the north.

The position is taken that Mitchell Curtis' testimony should have been excluded because it fails to provide any basis for the value he set for the resulting damages. However, for the reason stated, the landowner's evidence was admissible and it was for the jury to determine the weight to be given it under all the circumstances. An opinion concerning value is not absolutely worthless merely because the supporting facts are weak or merely because it does not support the opinion given. See Commonwealth, Dept. of Highways v. Elizabethtown Amusements, Inc., Ky., 367 S.W.2d 449, 451.

Another contention concerns the testimony given by Inez Curtis, the other landowner, when called as a witness. In undertaking to assess the amount of damages sustained by the remainder of the property, she was allowed to testify about the continual noise motor vehicles make in traveling upon the turnpike, night and day. As the residence is located within 203 feet of the turnpike, she stated that this noise affects the comfort of those who live in it and she believed this fact tends to depreciate its value.

It is claimed the jury should not have been allowed to take cognizance of this character of evidence because it is not relevant proof. In Commonwealth, Dept. of Highways v. Elizabethtown Amusements, Inc., supra, it was pointed out that a reduction in the value of residential property as a consequence of a highway's being brought in close proximity to it may be considered as an element of condemnation damages. The difficulty we

have with Inez Curtis' testimony is that she did not give a reasonable opinion as to the amount of damage incurred by the location of the turnpike so near the residence. Her failure to do this makes her testimony incomplete and therefore incompetent. Still, we do not believe, in view of the size of the verdict reached, the jury was greatly influenced by it.

The Commonwealth's sole ground urged for the reversal of the judgment is that the jury was allowed to consider evidence, which it contends was incompetent and therefore inadmissible, with the result that attention was directed at matters calculated to arouse their passion and prejudice. We have discussed all the evidence, of which complaint is made, and we have decided it was competent and admissible or, if not, it was not prejudicial. It follows that the Commonwealth has not shown to our satisfaction that the jury was motivated by passion and prejudice when they returned their verdict. No question is raised about the amount.

Wherefore, the judgment is affirmed.