DEPARTMENT OF TRANSPORTATION v TOMKINS

Docket No. 256038. Submitted December 6, 2005, at Grand Rapids.
   Decided March 2, 2006, at 9:00 a.m.

   The Michigan Department of Transportation (MDOT) brought a
   condemnation action pursuant to the Uniform Condemnation
   Procedures Act, MCL 213.51 *et seq.*, in the Kent Circuit Court
   against Rodney and Darcy Tomkins, seeking a small strip of the
   defendants' land for use in a county road overpass to be con-
   structed above a new state highway. The parties agreed that the
   strip of land was valued at $3,800. However, the Tomkinses sought
   additional severance damages to the remainder of their property
   for highway effects such as proximity to the highway and dust,
   dirt, noise, vibration, and smell, from the highway project. The
   court, George S. Buth, J., granted MDOT's motion in limine,
   concluding that MCL 213.70(2) is clear and constitutional, and
   precludes the defendants from presenting evidence of the general
   effects of the project in the process of determining just compensa-
   tion for the property taken. The defendants appealed that decision,
   arguing that the statute is an unconstitutional limitation on their
   right to just compensation.

      The Court of Appeals *held*:

      For a governmental agency to take private property for a public
   use under the right of eminent domain, that governmental agency
   must pay just compensation to the owner of the property. US
   Const, Am V; Const 1963, art 10, § 2. The limitation on general
   damages set forth in MCL 213.70(2), as applied in partial taking
   cases, impermissibly conflicts with the established constitutional
   meaning of "just compensation," which requires consideration of
   all factors affecting the market value of the remaining parcel. The
   rule in that statute, that the general effects of a project for which
   property is taken that are experienced by the general public or by
   property owners from whom no property is taken shall not be
   considered in determining just compensation, does not apply to
   property owners who have had a partial taking of their real
   property, as in this case. A remand is necessary in this case for a
   determination whether the land taken was used in an integral and
   inseparable part of the highway construction project. If so, the

defendants would be entitled to just compensation that takes into account all relevant factors affecting the market value of the remaining parcel.

Reversed and remanded for further proceedings.

EMINENT DOMAIN — PARTIAL TAKING — JUST COMPENSATION — SEVERANCE DAMAGES.

Where part of privately owned realty is taken by eminent domain for use in a public improvement and the use of the land taken constitutes an integral and inseparable part of the single use to which the land taken and other adjoining land is put, any decrease in the fair market value of the remaining parcel resulting from the improvement is properly taken into account in determining the just compensation to which the owner is entitled for the partial taking (US Const, Am V; Const 1963, art 10, § 2).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Raymond O. Howd*, First Assistant Attorney General, and *Robert L. Mol*, Assistant Attorney General, for the plaintiff.

*Rhoades McKee* (by *Scott J. Steiner*) for the defendants.

Before: WHITBECK, C.J., and BANDSTRA and MARKEY, JJ.

PER CURIAM. In this condemnation action, defendants Rodney Tomkins and Darcy Tomkins appeal by right the trial court's order granting plaintiff Michigan Department of Transportation (MDOT) summary disposition under MCR 2.116(C)(10). We reverse and remand.

I. BASIC FACTS AND PROCEDURAL HISTORY

This case stems from a right-of-way that MDOT acquired for construction of the M-6 highway just outside of Grand Rapids. The 20-mile, $420 million M-6 project largely redefined most of the Grand Rapids metropolitan area by connecting I-96 to M-37 and US

131, and by providing a limited access highway loop around the Grand Rapids area. Part of the construction project required MDOT to construct various bridges, or overpasses, to continue existing county roads over the new M-6 highway. One such county road was Kenowa Avenue. The Tomkinses' single-family home was situated on approximately two acres of land abutting Kenowa Avenue. After the Tomkinses rejected MDOT's offer of $4,200 for a 49-foot-wide by 120-foot-long strip of their property located parallel to Kenowa Avenue, MDOT filed a condemnation complaint pursuant to the Uniform Condemnation Procedures Act (UCPA), MCL 213.51 *et seq.*

Both parties' expert appraisers agreed that the fair market value of the strip of property taken was $3,800. However, the Tomkinses alleged that they were entitled to an additional $48,200 in damages attributable to the effects of the M-6 highway. Tomkinses' appraiser referred to these damages as "the highway effects." Specifically, the Tomkinses' appraiser took into account "the proximity of the subject property to the highway" and the additional "dust, dirt, noise, vibration, and smell" when calculating the additional damages.

MDOT filed a motion in limine, arguing that § 20(2) of the UCPA[1] precluded the Tomkinses from presenting evidence of the general effects of the project to determine just compensation. Alternatively, MDOT sought summary disposition under MCR 2.116(C)(8) and *Spiek v Dep't of Transportation*,[2] arguing that a claim for noncompensable damages, like general "highway effects," in a condemnation action failed to state a claim on which relief may be granted. The Tomkinses argued that just compensation in a partial taking must include

---

[1] MCL 213.70(2).

[2] *Spiek v Dep't of Transportation*, 456 Mich 331; 572 NW2d 201 (1998).

compensation for everything that causes a diminution in the market value of the remaining property, including "highway effects." The Tomkinses further argued that § 20(2) of the UCPA was an unconstitutional limitation on their right to just compensation.

In granting MDOT's motion in limine, the trial court ruled that § 20(2) of the UCPA was clear and that the statute's method of determining just compensation in condemnation actions was constitutional. The trial court explained that "[i]t would make no sense to allow [the Tomkinses] to bootstrap themselves into a position of being compensated for M-6 when all that's taken is a narrow strip along Kenowa," a taking that the trial court concluded was only incidentally related to the M-6 project. Accordingly, the trial court held that the general effects of the M-6 highway project would not be considered in determining the Tomkinses' just compensation.

MDOT filed a motion for summary disposition under MCR 2.116(C)(10) and entry of final judgment, arguing that because the trial court's order barred the Tomkinses' $48,200 claim relating to "highway effects" and because both parties had agreed that just compensation for the land actually taken was $3,800, there were no other disputed claims. The Tomkinses stipulated the entry of a final judgment awarding them $3,800, plus statutory interest, expert fees, and attorney fees.

## II. MOTION FOR SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Under MCR 2.116(C)(10), a party may move for dismissal of a claim on the grounds that there is no genuine issue with respect to any material fact and that the moving party is entitled to judgment as a matter of law. We review de novo the trial court's ruling on a

motion for summary disposition.[3] Where a motion for summary disposition also challenges the constitutionality of a statute, we also review de novo that question of law.[4] Further, when the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute precludes the admissibility of the evidence, we review de novo that issue.[5]

### B. LAW OF CONDEMNATION AND JUST COMPENSATION

" 'Eminent domain' or 'condemnation' is the power of a government to take private property."[6] The Fifth Amendment of the United States Constitution provides that the federal government may not take private property unless it is done for a public use and with just compensation.[7] The Michigan Constitution contains a similar clause requiring just compensation in these circumstances: "Private property shall not be taken for public use without just compensation . . . ."[8] Similarly, the UCPA requires that courts "ascertain and determine just compensation to be made for the acquisition of the [condemned] property."[9] "This reiteration of the constitutional language is significant because to the degree the Constitution has been construed to outline the nature of 'just compensation,' the statute must be similarly construed because no act of the Legislature can take away what the Constitution has given."[10]

---

[3] *Spiek, supra* at 337.

[4] *McDougall v Schanz*, 461 Mich 15, 23; 597 NW2d 148 (1999).

[5] *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

[6] *Silver Creek Drain Dist v Extrusions Div, Inc*, 468 Mich 367, 373; 663 NW2d 436 (2003).

[7] *Id.* at 374.

[8] Const 1963, art 10, § 2; *Silver Creek, supra* at 374.

[9] MCL 213.55(1).

[10] *Silver Creek, supra* at 374.

"Just compensation . . . must put the party injured in as good position as he would have been if the injury had not occurred."[11] In keeping with this principle, the Michigan Supreme Court has held that determination of "just compensation" requires "that the proper amount of compensation for the property takes into account all factors relevant to market value."[12] The Court further clarified that there was no indication in the UCPA that the Legislature intended to abrogate this established meaning of "just compensation."[13] "Indeed, to attribute such an intent, i.e., the intent to diminish a constitutional standard by statute, is to place the legislators in the posture of acting unconstitutionally," which is a construction that the Court will seek to avoid "unless no other construction is possible."[14] Here, however, we conclude that, under the circumstances of this case, no other construction is possible. Our review of Michigan precedent and other persuasive authority necessitates our conclusion that the limitation on general damages set forth in § 20(2) of the UCPA, as applied to partial taking cases, impermissibly conflicts with the established constitutional meaning of "just compensation."

A condemnee's damages are, in general, measured by the fair market value of the property taken.[15] But where only a portion of the whole parcel is taken, it is possible for the remaining property to also suffer dam-

---

[11] *State Hwy Comm'r v Eilender*, 362 Mich 697, 699; 108 NW2d 755 (1961).

[12] *Silver Creek, supra* at 378-379; see *In re Widening of Gratiot Avenue*, 294 Mich 569, 574-575; 293 NW 755 (1940) (explaining pre-1963 interpretation of "just compensation" relating to leasehold estates).

[13] *Silver Creek, supra* at 379.

[14] *Id.*

[15] *Dep't of Transportation v Sherburn*, 196 Mich App 301, 304; 492 NW2d 517 (1992).

ages attributable to the taking.[16] In such a case, the value of the property taken is allowed as direct compensation, but the remaining portion's decrease in value, by virtue of the use made of the property taken, is also allowable as compensation even though this is strictly consequential damage in nature.[17] This diminution in value, or "severance damages," is measured by calculating the difference between the fair market value of the remaining property before and after the taking.[18] Thus, "[t]he proper measure of damages in a condemnation case involving a partial taking consists of the fair market value of the property taken plus severance damages to the remaining property[.]"[19] Indeed, the Michigan Standard Jury Instructions provide that, in valuing the property left after the taking, a jury should take into account various factors, including

> (1) its reduced size, (2) its altered shape, (3) reduced access, (4) any change in utility or desirability of what is left after the taking, (5) the effect of the applicable zoning ordinances on the remaining property, and (6) the use which the *[name of condemning authority]* intends to make of the property it is acquiring and the effect of that use upon the owner's remaining property.[20]

And according to the Michigan Supreme Court, "*any evidence that would tend to affect the market value of*

---

[16] *Johnstone v Detroit, G H & M R Co*, 245 Mich 65, 81; 222 NW 325 (1928); *Sherburn, supra* at 305. We do not consider the "cost-to-cure" method in this case because it has not been alleged that the damages to the remaining property could be cured by the property owners taking some action to rectify some or all of the injuries sustained as a result of the taking. See *Sherburn, supra* at 305.

[17] *In re Widening of Fulton Street*, 248 Mich 13, 20-21; 226 NW 690 (1929); *Johnstone, supra* at 81; see also *Bauman v Ross*, 167 US 548, 574-575, 580; 17 S Ct 966; 42 L Ed 270 (1897).

[18] *Sherburn, supra* at 305; *State Hwy Comm v Minckler*, 62 Mich App 273, 277; 233 NW2d 527 (1975); see also M Civ JI 90.12.

[19] *Sherburn, supra* at 306.

[20] M Civ JI 90.12.

the property as of the date of condemnation is relevant[,] . . . to the extent that 'the [evidence] would have affected the price which a willing buyer would have offered for 'the property just prior to the taking.' "[21] However, the rule is not without limitations. An owner should not to be enriched because of the condemnation; thus, "the total damages awarded may not exceed the fair market value of the whole parcel before the taking."[22]

### C. CONSTITUTIONALITY OF MCL 213.70(2)

The plain language of § 20(2) of the UCPA excludes consideration of the general effects of a public project in determining just compensation:

> The general effects of a project for which property is taken, whether actual or anticipated, that in varying degrees are experienced by the general public or by property owners from whom no property is taken, shall not be considered in determining just compensation. A special effect of the project on the owner's property that, standing alone, would constitute a taking of private property under section 2 of article X of the state constitution of 1963 shall be considered in determining just compensation. To the extent that the detrimental effects of a project are considered to determine just compensation, they may be offset by consideration of the beneficial effects of the project.[23]

The Tomkinses argue that general effects limitation in § 20(2) on the just compensation determination is unconstitutional because it is contrary to judicial precedent interpreting just compensation as including con-

---

[21] *Dep't of Transportation v VanElslander*, 460 Mich 127, 130; 594 NW2d 841 (1999), quoting *Eilender, supra* at 699 (emphasis added); see *United States v Meadow Brook Club*, 259 F2d 41, 45 (CA 2, 1958); *Minckler, supra* at 277.

[22] *Sherburn, supra* at 306.

[23] MCL 213.70(2).

sideration of *all* relevant factors that may affect the value of the property, including those that are *damnum absque injuria*, or damage without injury. Thus, in this case of first impression, we are faced with determining whether § 20(2) is impermissibly in conflict with constitutional just compensation principles.

"[A] statute is presumed to be constitutional unless its unconstitutionality is clearly apparent."[24] The constitutionality of a statute must be determined on the basis of the provisions of the act itself.[25] The party challenging the constitutionality of the statute has the burden of proving the invalidity of the statute.[26]

Under the broad scope of § 20(2), certain "general" damages that are shared in common by the public should not be considered in the determination of just compensation awards. However, this statutory mandate fails to recognize that there is a distinction between liability in inverse condemnation cases and damages in direct, partial condemnation cases.[27] "An inverse or reverse condemnation suit is one instituted by a landowner whose property has been taken for public use 'without the commencement of condemnation proceedings.' "[28] To be liable for a "taking" for purposes of inverse condemnation, the property owner must demonstrate that the government, by its actions, has effectively and permanently deprived the owner of any

---

[24] *McDougall, supra* at 24.

[25] *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 304; 586 NW2d 894 (1998).

[26] *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000).

[27] See Pesick, *Eminent domain: Calculating just compensation in partial taking condemnation cases*, 82 Mich B J 37-38 (Dec, 2003).

[28] *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 88-89; 445 NW2d 61 (1989), quoting *Hart v Detroit*, 416 Mich 488, 494; 331 NW2d 438 (1982).

possession or use of the property.[29] Conversely, by virtue of filing a direct condemnation action, the government is admitting liability, and the only issue is a determination of just compensation.[30]

MDOT relies on *Spiek*, in which the Michigan Supreme Court considered whether noise, dust, vibration, and fumes experienced by owners of property along an interstate freeway constituted a taking of a recognized property interest where the effects alleged were not unique or peculiar in character.[31] The Court held that the property owners had no constitutional right to compensation for loss in their property values caused by the noise, dust, vibration, and fumes from the new freeway, because to receive just compensation for project effects, the owner must show that the damages are unique, special, peculiar, or in some way different in kind or character from the effects incurred by all property owners who reside next to busy highways and roads.[32] However, the Court carefully limited application of this rule to inverse condemnation cases where there had been no direct or physical invasion of the landowner's property.[33] Thus, the *Spiek* ruling is not binding on condemnation cases involving partial takings.[34] Accordingly, we conclude that the *Spiek* ruling does not require that a landowner who suffers severance damages from a partial taking demonstrate damages to the remaining land that are special or "different

---

[29] *Electro-Tech, supra* at 89; *Hart, supra* at 501-502; see Pesick, p 37.

[30] Pesick, p 37.

[31] *Spiek v Dep't of Transportation, supra* at 332.

[32] *Id.* at 333, 339.

[33] *Id.* at 339-345; see Ackerman & Yanich, *Just compensation and the framers' intent: A constitutional approach to road construction damages in partial taking cases,* 77 U Det Mercy L R 241, 253-254 (2000).

[34] Ackerman & Yanich, p 254.

in kind" from those suffered by other nearby landowners.[35]

MDOT also relies on *In re Ziegler*, in which the Michigan Supreme Court held that property owners were not entitled to damages for the diminution in value of their own property resulting from the taking of their neighbor's property, not their own. The Court explained:

> It was only for the taking of a part of their own land that [the defendants] would be entitled to receive just compensation for the damages to the remainder, and the extent of recovery may not be thereby enlarged so as to include items otherwise not compensable[, such as] . . . diminution in the value of the remainder caused by the acquisition of the adjoining lands of others for the same undertaking.[36]

However, *Ziegler* is distinguishable from the present case. In *Ziegler*, the landowners claimed, in part, that their just compensation award "should include the damage to them resulting from the taking of the adjoining land of their neighbor to the south[.]"[37] But the Tomkinses, unlike the landowners in *Ziegler*, are not directly claiming damages from the taking of their neighbors' land; rather, they are claiming diminution in the value of their own remaining land from the M-6 highway construction project for which, arguably,[38] part of their land was taken.

---

[35] *Id.*

[36] *In re State Hwy Comm'rs*, 326 Mich 183, 188-189; 40 NW2d 111 (1949) (citations omitted); see also *Charles Murphy, MD, PC v Detroit*, 201 Mich App 54, 57; 506 NW2d 5 (1993) (in which the plaintiff was denied his claim of diminished value to his land from the taking of adjacent land.)

[37] *In re State Hwy Comm'r, supra* at 186.

[38] See our discussion of the purpose of a taking in part C.

MDOT additionally relies on *State v Schmidt*,[39] cited by the Michigan Supreme Court in n 14 of *Spiek*.[40] In *Schmidt*, the Texas Supreme Court rejected the property owner's argument that the determination of just compensation is different depending on whether a part of the property owner's land is condemned for a public project, or whether the owner seeks damages in an inverse condemnation case.[41] Specifically, the Texas Supreme Court opined:

> The argument that a different rule applies in condemnation cases and inverse condemnation cases, does not find support in our decisions. To the contrary, our decisions have uniformly refused to allow severance damages based upon diversion of traffic and circuity of travel. . . .

> \* \* \*

> Thus, we have refused to allow recovery for loss of value due to diversion of traffic and circuity of travel in both condemnation cases. We have not considered whether severance damages should be allowed because of impaired visibility of property or disruption of use due to construction activities, but there is no reason why these two elements of injury should be treated differently than the others.[42]

While noting that we are not bound to follow the merely persuasive authority of *Schmidt*, we also note that contrary to the *Schmidt* holding, a number of our sister states have made clear that the "different in kind" limitation does not apply to cases involving direct appropriations of partial parcels.[43] Notably, for example,

---

[39] *State v Schmidt*, 867 SW2d 769 (Tex, 1993).

[40] *Spiek, supra* at 348 n 14.

[41] *Schmidt, supra* at 776-777.

[42] *Id.*

[43] *Arkansas Hwy Comm v Kesner*, 239 Ark 270, 277; 388 SW2d 905 (1965); *La Plata Electric Ass'n, Inc v Cummins*, 728 P2d 696, 700 (Col,

in *Los Angeles Co, Metro Transportation Auth v Continental Dev Corp*, 16 Cal 4th 694, 712; 66 Cal Rptr 2d 630; 941 P2d 809 (1997), the California Supreme Court explained that "[s]everance damages are not limited to special and direct damages, but can be based on any factor, resulting from the project, that causes a decline in the fair market value of the property . . . . [T]he landowner seeking severance damages need only prove the value of his or her property has been impaired, not that other members of the public are not similarly affected." Thus, it is reasonable for us also to reach the conclusion that a different rule for just compensation does indeed apply in direct, partial condemnation cases as opposed to inverse condemnation cases, and we do so

1986) (stating that "the general damage/special damage distinction has no validity . . . when reduction in property value results from a taking of a portion of the land held by the property owner."); *Commonwealth Dep't of Hwys v Curtis*, 385 SW2d 48, 51 (Ky App, 1964) ("[A] reduction in the value of residential property as a consequence of a highway's being brought in close proximity to it may be considered as an element of condemnation damages."); *Missouri P R Co v Nicholson*, 460 So 2d 615, 627 (La App, 1984) ("[A]esthetic considerations, unsightliness of the particular project, excessive noise, an inherent fear of living in close proximity to the particular project, in conjunction with other proven factors, . . . can support an award for severance damages, if these factors serve to reduce the value of the remainder of the property."); *City of Crookston v Erickson*, 244 Minn 321, 325; 69 NW2d 909 (1955) (stating that where there is a partial taking, "It is sufficient that the damage is shown to have been caused by the taking of part of [the] property even though it is damage of a type suffered by the public as a whole."); *New Jersey v Elizabeth Bd of Ed*, 116 NJ Super 305, 314; 282 A2d 71 (1971) (stating that where there are damages to the remainder when part of a tract is physically appropriated, "it matters not that the injury is suffered in common with the general public."); *South Dakota Hwy Comm v Bloom*, 77 SD 452, 461; 93 NW2d 572 (1958) ("[W]here a part of an owner's parcel or tract of land is taken for a public improvement such as a public highway, the owner is entitled to be compensated for the part taken and for consequential damage to the part not taken, even though the consequential damage is of a kind suffered by the public in common."); *Yakima v Dahlin*, 5 Wash App 129, 131-132; 485 P2d 628 (1971).

conclude today.[44] Accordingly, we hold that the § 20(2) limitation on general damages, as applied to partial takings cases, impermissibly conflicts with the established constitutional meaning of "just compensation," which requires that *any* and *all* factors relevant to market value be taken into consideration when determining the difference in the remaining property's value before and after the taking.[45]

### D. APPLICATION OF THE LAW

Turning to the facts of the present case, we reiterate that "any evidence that would tend to affect the market value of the property as of the date of condemnation is relevant[,] . . . to the extent that 'the [evidence] would have affected the price which a willing buyer would have offered for the property just prior to the taking.' "[46] In a partial taking case, considerations that will affect the price that a willing buyer would offer for the land include any changes in utility or desirability of what is left after the taking, which is logically dependent on the use intended for the property acquired by the government and the related effects of that use on the owner's remaining property.[47] Stated in another way, in a partial taking case the only way to fulfill the objective of just compensation for reductions in the value of the remainder parcel is to determine the

---

[44] 2A Nichols, Eminent Domain (3d ed), § 6.08[2], pp 6-129, 6-130 ("In the severance damage context, it is occasionally noted that any diminution in value to the remainder parcel is compensable if it is directly attributable to the taking, regardless of the existence or non-existence of similar damage to neighboring properties.")

[45] See *Silver Creek, supra* at 377-379; *VanElslander, supra* at 130; 2 Official Record, Constitutional Convention 1961, pp 2581-2587.

[46] *VanElslander, supra* at 130 (citations deleted).

[47] M Civ JI 90.12.

damages traceable to the creation of the project for which the land was condemned.[48]

In *Campbell v United States*,[49] the United States Supreme Court held that a diminution in value of property remaining after a partial taking caused by the acquisition of adjoining lands for public use is not a compensable damage. In *Campbell*, the federal government condemned a portion of the owner's land for construction of a nitrate plant, and the owner sought compensation for the diminution in value that he claimed would occur to the remainder of his property.[50] The *Campbell* Court held, however, that the owner was not entitled to compensation for diminution in value to his remaining property to the extent that other nearby property owners would experience the same diminution, although in varying degrees, caused by the taking of their land for the same construction project.[51] However, the *Campbell* Court also noted that

> [t]he land taken from the plaintiff was not shown to be indispensable to the construction of the nitrate plant or to the proposed use of the other lands acquired by the United States. The damages resulting to the remainder from the taking of a part were separable from those caused by the use to be made of the lands acquired from others.[52]

On the basis of this language, a number of courts have recognized an exception to the *Campbell* rule, which, absent an exception, disallows compensation for damages to the remainder of a parcel arising out of the

---

[48] Ackerman & Yanich, p 244.

[49] *Campbell v United States*, 266 US 368, 371-372; 45 S Ct 115; 69 L Ed 328 (1924).

[50] *Id.* at 369.

[51] *Id.* at 371-372.

[52] *Id.* at 371.

entire project and limits recoverable damages to those suffered by the remainder as a direct result of the partial taking itself.

In *Andrews v Cox*, the Connecticut Supreme Court elucidated the exception as follows: "[W]here the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put, the effect of the whole improvement is properly to be considered in estimating the depreciation in value of the remaining land."[53] In *Crookston*, the Minnesota Supreme Court similarly ruled that

> to the extent that . . . a part of an owner's land is taken for a public improvement . . . , and the part taken 'constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put,' the owner is entitled to recover the full damage to his remaining property due to such public improvement, even though portions of the public improvement are located on land taken from surrounding owners.[54]

In light of this "integral and inseparable" exception, the Tomkinses argue that the use of the part of their property taken along Kenowa Avenue for the construction of an overpass was an integral and inseparable part of the M-6 construction project. Therefore, the Tomkinses argue, the general effects of the M-6 highway should be considered in estimating the depreciation in the value of their remaining land.

MDOT contests the Tomkinses' claim and argues that the Kenowa overpass was merely incidental to the M-6 project. While MDOT concedes that the land it

---

[53] *Andrews v Cox*, 129 Conn 475, 482; 29 A2d 587 (1942); see also *Crookston, supra* at 327.

[54] *Crookston, supra* at 327; see also *Bloom, supra* at 463; *Elizabeth Bd of Ed, supra* at 315.

acquired from the Tomkinses along Kenowa was part of the M-6 project, it contends that any damage resulting from the M-6 highway effect "was clearly separable from that occasioned by the loss of the strip of their own tract." But this statement misinterprets the integral and inseparable exception. Contrary to MDOT's interpretation, the exception does not come into play when the damages to the remainder parcel from the partial taking itself can be separated from any damages resulting from the whole project. Rather, the exception applies where the part taken constitutes an integral and inseparable part of the whole improvement for which the part was taken. Thus, the relevant inquiry here is whether the Kenowa overpass constitutes an integral and inseparable part of the M-6 project.

Considering the integral and inseparable inquiry, we note that in MDOT's condemnation complaint it specifically alleged that "the property . . . is being acquired for a necessary public improvement, namely the relocating, establishing, opening and/or improvement of Highway M-6 in Kent, Michigan." And on appeal MDOT concedes, "As part of the [M-6 highway] project, MDOT *needed* to construct various bridges to continue existing county roads over the new M-6 roadway." (Emphasis added.) We further note that case law from other jurisdictions indicates that a project that is integrated into construction of a highway is an integral and inseparable part of the whole improvement, and the property owner is entitled to just compensation for the full depreciation of the remainder due to the highway project. In *Bloom, supra* at 461, the South Dakota Supreme Court concluded that, "where a part of an owner's parcel or tract of land is taken for a public improvement such as a public highway, the owner is entitled to be compensated for the part taken and for consequential damage to the part not taken, even

though the consequential damage is of a kind suffered by the public in common." However, whether the use of a part taken is, in fact, an integral and inseparable part of the whole improvement generally presents a question to be determined by a trier of fact.[55]

Given that the record provided does not include sufficient argument or evidence on the question of the relationship of the Kenowa overpass to the M-6 project (that is, whether it was indeed integral and inseparable, or separable) we conclude that the prudent course of action is to remand this action for further briefing and production of evidentiary support, if any, on this question. If, on remand, the trial court concludes that there is no question of fact that the Kenowa overpass was merely incidental to the M-6 highway, then summary disposition is appropriate and the prior final order should be reaffirmed. "[W]here the use of the part taken is found to be separable, consequential damages should be allowed only for the use of the part taken . . . ."[56] But if there is a question of fact and, on further proceedings, a trier of fact determines that the Kenowa overpass was an integral and inseparable part of the M-6 improvement, then the matter should proceed to allow a trier of fact to consider the experts' testimony regarding the proper just compensation of the remainder that takes into account all relevant factors affecting its market value.[57]

---

[55] *Andrews, supra* at 482; *Crookston, supra* at 327-328.

[56] *Id.*

[57] See, e.g., *Curtis, supra* at 51 ("[A] reduction in the value of residential property as a consequence of a highway's being brought in close proximity to it may be considered as an element of condemnation damages."); *Missouri P R Co, supra* at 627 ("[A]esthetic considerations, unsightliness of the particular project, excessive noise, an inherent fear of living in close proximity to the particular project, in conjunction with other proven factors, . . . can support an award for severance damages, if

We reverse and remand for further proceedings consistent with this opinion. We retain jurisdiction.

---

these factors serve to reduce the value of the remainder of the property."); 4A Nichols, Eminent Domain (3d ed), § 14A.03(1), pp 14A-38, 14A-39 ("The effect of a partial taking upon the 'amenities' of the owner's remainder must be considered. The term 'amenities' relates to those events or circumstances which impact the enjoyment of property . . . . Amenities include noise, loss of view or privacy, inconvenience of access, and odors.")