WEAVER, J.
(dissenting). I dissent from the majority opinion reversing the Court of Appeals judgment and holding that MCL 213.70(2) is constitutional. I would hold that the Legislature, by enacting MCL 213.70(2) and imposing limits on what compensation a property owner could receive upon a partial direct taking, violated the Michigan Constitution’s guarantee of “just compensation” for property taken by the government, because the proper process for determining the amount of just compensation is left to a trier of fact. Accordingly, I would affirm the Court of Appeals judgment remanding the case to the circuit court for a trial to determine whether the defendants may receive damages to compensate for the diminution in value of their remaining property after the plaintiff took part of their property to complete a large road construction project.
*213 Furthermore, I dissent with regard to the majority’s constitutional analysis of the term “just compensation,” because the majority’s interpretation of “just compensation” as a legal term of art creates a circular analysis that seemingly abrogates the common understanding of “just compensation” before this Court’s first analysis of “just compensation” as a legal term of art in Silver Creek Drain Dist v Extrusions Div, Inc, 468 Mich 367; 663 NW2d 436 (2003). I continue to disagree that “just compensation” is a legal term of art that only those learned in the law would have understood when the Michigan Constitution of 1963 was adopted by the people of this state.[1]
I. FACTS AND PROCEEDINGS
Plaintiff Michigan Department of Transportation (MDOT) initiated this condemnation action under the Uniform Condemnation Procedures Act (UCPA)[2] after the defendants, Rodney and Darcy Tomkins, rejected plaintiffs offer to buy a portion of the Tomkinses’ land adjacent to Kenowa Avenue in Kent County. Plaintiff sought to buy the strip of land for use in extending Kenowa Avenue as an overpass over the new M-6 highway that plaintiff was constructing near defendants’ property.
Experts for both plaintiff and defendants agreed that the market value of the strip of land at issue was $3,800. The defendants sought additional compensation of $48,200 for the diminution in value of their remaining parcel of land, caused by negative effects arising from the “dust, dirt, noise, vibration, and smell” of the nearby M-6 highway.
*214 Plaintiff filed a motion in limine, arguing that evidence of the general effects of the M-6 highway project was precluded under MCL 213.70(2). Plaintiff also filed, in the alternative, a motion for summary disposition under MCR 2.116(C)(8), arguing that a claim for general-effects damages in a condemnation action is not a claim for which relief may be granted. The trial court granted plaintiffs motion in limine to exclude the evidence of general effects in the calculation of the defendants’ just compensation.
Plaintiff filed a motion for summary disposition under MCR 2.116(C)(10). The defendants stipulated the entry of a final judgment for the value of the land taken, $3,800, plus statutory interest, expert fees, and attorney fees.
The Court of Appeals reversed the trial court’s decision to grant plaintiffs motion in limine.[3] The Court of Appeals held that all relevant factors must be taken into account when determining the value of just compensation under the Michigan Constitution and, thus, it concluded that the preclusion of general-effects damages under MCL 213.70(2) violated the Michigan Constitution. The Court stated that in a partial taking “[w]here the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put, the effect of the whole improvement is properly to be considered in estimating the depreciation in value of the remaining land.”[4] While retaining jurisdiction, the Court of Appeals remanded the case to the trial court for the court to determine whether there was an issue of *215 fact with regard to whether the Kenowa Avenue overpass, for which the defendants’ strip of land was taken, was “integral [to] and inseparable” from the M-6 construction project. On remand, the trial court concluded that there was an issue of fact. Thereafter, the Court of Appeals again remanded the case to the trial court to determine defendants’ just compensation, taking into account all factors relevant to the market value of defendants’ remaining property.
Plaintiff sought leave to appeal in this Court, and this Court granted leave.[5]
II. STANDARD OF REVIEW
Questions concerning the constitutionality of a statutory provision are subject to review de novo. Tolksdorf v Griffith, 464 Mich 1, 5; 626 NW2d 163 (2001).
III. THE CONSTITUTIONALITY OF MCL 213.70(2)
Article 10, § 2 of the 1963 Michigan Constitution secures the right of property owners to just compensation when the government takes land for public use. At the time of the instant condemnation suit, Const 1963, art 10, § 2 provided:[6]
Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record.
This Court has held on a number of occasions that the just compensation provided in Const 1963, art 10, § 2 “must put the party injured in as good position as he *216 would have been if the injury had not occurred.” State Hwy Comm’r v Eilender, 362 Mich 697, 699; 108 NW2d 755 (1961).[7]
In the instant case, plaintiff MDOT sought to directly take part of the defendants’ property. In cases involving claims of partial taking, this Court has held that “just compensation” entitles the property owner to direct compensation for the value of the property taken, and consequential damages for the diminution in value of the remainder of the property owner’s property.[8] “[A]ny evidence that would tend to affect the market value of the property as of the dáte of condemnation is relevant.” Dep’t of Transportation v VanElslander, 460 Mich 127, 130; 594 NW2d 841 (1999). The determination of value is not a matter of formulas or artificial rules, but of sound judgment and discretion considering all the relevant facts in a particular case.[9]
The UCPA prescribes the manner in which just compensation is “first made or secured” pursuant to Const 1963, art 10, § 2. Section 20(2) of the UCEA, MCL 213.70(2), precludes property owners from including the general effects of a taking in the calculation of just compensation. The statute provides:
The general effects of a project for which property is taken, whether actual or anticipated, that in varying degrees are experienced by the general public or by property owners from whom no property is taken, shall not be *217 considered in determining just compensation. A special effect of the project on the owner’s property that, standing alone, would constitute a taking of private property under section 2 of article X of the state constitution of 1963 shall be considered in determining just compensation. To the extent that the detrimental effects of a project are considered to determine just compensation, they may be offset by consideration of the beneficial effects of the project.
The Court of Appeals correctly held that MCL 213.70(2) violated Const 1963, art 10, § 2.
Article 10, § 2 guarantees that a landowner will receive “just compensation” for a taking of that land: owner’s property. MCL 213.70(2), by partially limiting the compensation a landowner may receive in certain situations, decreases the amount of just compensation for landowners and, thus, it conflicts with the mandate of art 10, § 2 that “ [compensation shall be determined in proceedings in a court of record.” The Legislature does not have the authority to take away, or limit, the right of just compensation that the Constitution has guaranteed to landowners.
The majority errs by ruling that MCL 213.70(2) is constitutional. The majority does not cite any authority the Legislature has to limit “just compensation.” The majority states that acts of the Legislature are presumed constitutional. Instead of examining the text of the Constitution other than the words “just compensation,” the majority looks only to pre-1963 cases interpreting “just compensation.” By basing its opinion on the lack of precedent that would conflict with MCL 213.70(2), the majority ignores the language in the Constitution stating that the amount of compensation to be paid is a matter for the courts to decide. Furthermore, the majority disregards this Court’s precedent *218 stating that just compensation is designed to return landowners to the position they were in before the taking took place.
With regard to the Court of Appeals remand order to the trial court to determine whether the Kenowa Avenue overpass was “integral [to] and inseparable” from the M-6 project, the Court of Appeals correctly decided the issue. The “integral and inseparable” method, adopted from the Connecticut Supreme Court’s Andrews decision,[10] is a method of “sound judgment and discretion” that allows owners of land that was directly, but partially, taken to prove that their remaining property suffered diminution in value as a result of the taking.[11]
*219 In this case, the proper question in determining the amount of money required to return the defendants to their position before the taking is whether the project for which the defendants’ land was taken contributed to the diminution of value of the remainder of the defendants’ property.
Accordingly, I vote to affirm the Court of Appeals decision remanding the case for trial, and I support the reasons for the Court of Appeals decision.
IV “JUST COMPENSATION” AS A TERM OF ART
In Silver Creek, a majority of justices held that the Constitution’s term “just compensation” was a legal term of art that only those learned in the law could have understood when the Michigan Constitution was adopted in 1963.[12]1 dissented from that holding because it wrongly limited the analysis of the term “just compensation” to the understanding of those learned in the law, even though the constitutions throughout Michigan’s history left the determination of just compensation to other “freeholders” (landowners).[13] The majority’s constitutional analysis in this case reveals the flaws inherent in an analysis limited to the understanding of those learned in the law.
The majority, sticking to the “learned in the law” form of analysis, looks only to past cases interpreting the “just compensation” provision of the Michigan Constitution. The majority holds that, because this *220 Court had not interpreted “just compensation” with regard to “general effects” damages, a person sophisticated in the law in 1963 would not have understood “just compensation” to include “general effects” damages. The majority then reasons that, because a person sophisticated in the law in 1963 would not have understood “just compensation” to include “general effects” damages, the Constitution’s term “just compensation” does not include such damages. Thus, the majority concludes that the provision in MCL 213.70(2) precluding general-effects damages does not conflict with the Constitution and the statute is constitutional. I find the majority’s reasoning to be deeply flawed because the majority only looks for a pre-1963 case on point, and when it finds that there is no case on point, it ignores the plain language of the Constitution and marginalizes other cases interpreting “just compensation.”
In my Silver Creek dissent, I noted the long-established condemnation rule that “ ‘j]ust compensation’ has long been readily and reasonably understood to be that amount of money that puts the property owner whose property is taken in as good, but not better, a financial position after the taking as the property owner enjoyed before the taking.”[14] In the instant case, the majority disregards this rule because this Court had never specifically used it with regard to “general effects” damages. However, common sense dictates that if compensation for the “general effects” damages would serve to place the landowner in the position he or she was in before the taking, then “general effects” damages would be includable in “just compensation.” But the majority’s “legal term of art” *221 analysis only looks to the understanding of those “learned in the law.” It does not look to the “common” understanding of the people who ratified the Constitution.
Rather than adhere to the majority’s “legal term of art” analysis of “just compensation,” this Court should return to Michigan’s longstanding rule for interpreting the Michigan Constitution, as described by Justice COOLEY, under which
[t]he interpretation that should be given [the Constitution] is that which reasonable minds, the great mass of the people themselves, would give it. “... [T]he intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding ... .”[15]
As I stated in my partial dissent in Silver Creek, 468 Mich at 383, “this Court should not engage in a method of constitutional construction that unnecessarily sidesteps the long-established primary rule of constitutional construction.” Accordingly, I continue to dissent from the majority’s “legal term of art” analysis of “just compensation.”
V CONCLUSION
I dissent from the majority opinion reversing the Court of Appeals judgment and holding that MCL 213.70(2) is constitutional. I would hold that the Legislature, by enacting MCL 213.70(2) and imposing limits on what compensation a property owner could receive upon a partial direct taking, violated the Michigan Constitution’s guarantee of just compensation for *222 property taken by the government, because the proper process for determining the amount of just compensation is left to a trier of fact. Accordingly, I would affirm the Court of Appeals judgment remanding the case to the trial court.
Furthermore, I dissent with regard to the majority’s constitutional analysis of the term “just compensation,” because the majority’s interpretation of “just compensation” as a legal term of art creates a circular analysis that abrogates the common understanding of just compensation before this Court’s first analysis of “just compensation” as a legal term of art in Silver Creek.
CAVANAGH and KELLY, JJ., concurred with WEAVER, J.

 See my partial dissent in Silver Creek, 468 Mich at 382.

 MCL 213.51 et seq.

 Dep’t of Transportation v Tomkins, 270 Mich App 153; 715 NW2d 363 (2006).

 Id. at 168, quoting Andrews v Cox, 129 Conn 475, 482; 29 A2d 587 (1942).

 478 Mich 903 (2007).

 Const 1963, art 10, § 2 has since been amended by ballot initiative in 2006, but that amendment is not at issue in this case.

 See also Wayne Co v Britton Trust, 454 Mich 608, 622; 563 NW2d 674 (1997); In re Edward J Jeffries Homes Housing Project, 306 Mich 638, 650; 11 NW2d 272 (1943); In re Widening of Bagley Ave, 248 Mich 1, 5; 226 NW 688 (1929); Fitzsimons & Galvin, Inc v Rogers, 243 Mich 649, 664; 220 NW 881 (1928).

 Johnstone v Detroit, G H & M R Co, 245 Mich 65, 81; 222 NW 325 (1928); In re Widening of Fulton Street, 248 Mich 13, 20-21; 226 NW 690 (1929) .

 In re Widening of Bagley Ave, 248 Mich at 4.

 See n 4, supra.

 The “integral and inseparable” test offers courts a method of sound judgment and discretion in determining who may collect general-effects damages for partial takings because it ensures that compensation will only be awarded when a court finds that the general effects felt by the landowner arose from the taking of the landowner’s property. Under the test, if the land taken was separable from the larger project, and thus did not contribute to the effects felt by the owner, then the owner will not be compensated for those effects not directly related to the taking. Also, while the majority may claim it unfair that a landowner whose property is partially taken may recover general-effects damages while neighboring landowners, whose property remains intact, will not recover the damages even when the neighbors feel the same or worse general effects, the test does not involve a question of fairness, but rather a determination of who may recover for the general effects under the Constitution. The Michigan Constitution draws a line by only providing that just compensation be awarded to the landowners whose property was taken. There is no mention of compensation for landowners whose property was not taken by the government. Furthermore, the “integral and inseparable” test does not create a taking claim where none existed. As this Court held in Spiek v Dep’t of Transportation, 456 Mich 331; 572 NW2d 201 (1998), general effects cannot be used as the basis for a claim of a taking. However, once a direct taking has been established, just compensation is required to return the injured landowner to the position he or she enjoyed before the taking. In sum, the “integral and inseparable” test allows a jury to follow the Constitution by awarding just compensation to *219 those whose property was partially and directly taken, and the test allows the jury, in determining the amount of just compensation, to award damages that arise from the taking, in order to return the landowner to the same position the landowner enjoyed before the taking.

 468 Mich at 375-376.

 See my discussion of “just compensation” in previous constitutions, id. at 385-386.

 468 Mich at 384-385, citing Britton Trust, 454 Mich at 622; In re Edward J Jeffries Homes Housing Project, 306 Mich at 650; and In re Widening of Bagley Ave, 248 Mich at 5.

 Traverse City School Dist v Attorney General, 384 Mich 390, 405; 185 NW2d 9 (1971), quoting Cooley, Constitutional Limitations, p 81 (emphasis in Traverse City).