CHARLES MURPHY, MD, PC v CITY OF DETROIT

AMERICANA SUPERFOOD, INC v CITY OF DETROIT

Docket Nos. 139145, 139147. Submitted April 6, 1993, at Detroit. Decided August 2, 1993, at 9:15 A.M.

Charles Murphy, M.D., P.C., the owner of realty used as a medical clinic, and Americana Superfood, Inc., and Americana Superfood #1, the owners of realty used as a grocery store, brought separate actions for inverse condemnation in the Wayne Circuit Court against the City of Detroit and the Community and Economic Development Department after the defendants, as part of an urban renewal project, condemned and razed 1,400 houses occupied by 17,000 people near the plaintiffs' businesses. The plaintiffs alleged that the resultant decrease in the volume of their businesses constituted a de facto taking of their properties without just compensation. The court, John A. Murphy, J., summarily dismissed the plaintiffs' claims, ruling that no taking had occurred. The plaintiffs appealed, and the appeals were consolidated.

The Court of Appeals *held:*

For purposes of inverse condemnation, a taking occurs where government action permanently has deprived the property owner of any possession or use of the property. A de facto taking is established where some action by the government specifically directed toward the plaintiff's property has the effect of limiting the use of the property.

A taking cannot be established under the facts of this case. The defendants did not take from the plaintiffs their right to possess their lands and buildings, nor did the defendants take deliberate action toward the plaintiffs' properties that deprived the plaintiffs of the right to use their properties as they saw fit.

Affirmed.

EMINENT DOMAIN — INVERSE CONDEMNATION — LOSS OF BUSINESS VOLUME.

A decrease in the volume of business experienced by the owner of

REFERENCES

Am Jur 2d, Eminent Domain §§ 157, 199, 482.

See ALR Index under Eminent Domain; Inverse Condemnation.

a business and the land on which the business is located resulting from the acquisition and demolition of an adjacent residential neighborhood by a municipality exercising its power of eminent domain does not constitute a taking of the business owner's property for which the municipality must pay compensation (US Const Am V; Const 1963, art 10, § 2).

*Stone & Richardson, P.C.* (by *Ralph H. Richardson*), for plaintiffs.

*Donald Pailen,* Corporation Counsel, and *Deborah Ross Adams,* Assistant Corporation Counsel, for the defendants.

Before: MARILYN KELLY, P.J., and SHEPHERD and CONNOR, JJ.

CONNOR, J. Plaintiffs filed inverse condemnation actions, claiming that defendants' conduct resulted in a de facto taking of their property without compensation. On defendants' motion for summary disposition brought pursuant to MCR 2.116(C)(10), the trial court ruled that there was no taking and dismissed plaintiffs' claims. Plaintiffs appeal as of right, and we affirm.

Plaintiffs own property and operate businesses on East Jefferson Avenue in Detroit. Defendants used their power of eminent domain to purchase large areas of land nearby for two urban renewal projects, and leveled the residential neighborhoods that had been located on the land. Each plaintiff's volume of business was reduced about seventy-five percent from what it was before defendants' action.

We agree with the trial court that there is no genuine question of material fact and that, as a matter of law, defendants did not take anything that could be construed as plaintiffs' property.

Both our state and federal constitutions provide

that private property may not be taken for public use without just compensation. US Const, Am V; Const 1963, art 10, § 2. "Property" embraces everything over which a person may have a right to exclusive control or dominion. *Rassner v Federal Collateral Society, Inc,* 299 Mich 206, 213-214; 300 NW 45 (1941); *People v McKendrick,* 188 Mich App 128, 136; 468 NW2d 903 (1991). A "taking" for purposes of inverse condemnation means that government action has permanently deprived the property owner of any possession or use of the property. *Jack Loeks Theatres, Inc v Kentwood,* 189 Mich App 603, 608; 474 NW2d 140 (1991), modified in part 439 Mich 968 (1992). While there is no exact formula to establish a de facto taking, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of the property. "[T]he form, intensity, and deliberateness of the governmental actions toward the injured party's property must be examined." *In re Acquisition of Virginia Park,* 121 Mich App 153, 160; 328 NW2d 602 (1982).

Defendants did not take from plaintiffs their right to possess their lands and buildings, and defendants took no deliberate action toward plaintiffs' property that deprived plaintiffs of their right to use their property as they saw fit. They did not take from plaintiffs their right to sell their land, lease it, or give it away. Plaintiffs may continue to operate their businesses on their land, or may use their land for any other purpose that is not a nuisance to others, subject only to reasonable government regulation. *McKendrick, supra* at 137. In short, defendants took no action directed at plaintiffs' property.

We do not doubt that the value of plaintiffs' properties has greatly diminished because of defen-

dants' actions. By removing 1,400 residences, housing 17,000 people, from the neighborhood immediately adjacent to plaintiffs' businesses, defendants have effectively eliminated most of plaintiffs' potential customers. What had once been prime locations for a medical center and a grocery store suddenly became unsuitable for those endeavors. Presumably, plaintiffs paid a premium for their property because of its proximity to a substantial base of potential customers. They assumed their customer base would remain constant because of their expectation that the land nearby would continue to be used in the future as it had been used in the past.

However, expectations are not rights. Despite plaintiffs' assumption that the adjacent properties would always be a residential community, they had no right to require that the property remain unchanged. The exclusive right to control the use of the land did not belong to plaintiffs, but to their neighbors who owned it. When defendants bought the neighbors' land, they bought the right to control the use of the land. Despite the diminution in value of plaintiffs' land and buildings, resulting from defendants' change in the way they used their land, defendants took no deliberate action directed toward plaintiffs' property rights that deprived plaintiffs of possession or use of their land or buildings.

Affirmed.