CLIFTON, APPELLANT, *v.* VILLAGE OF BLANCHESTER, APPELLEE.

[Cite as *Clifton v. Blanchester,* 131 Ohio St.3d 287, 2012-Ohio-780.]

*Appropriation—Zoning—Regulatory taking—Standing of owner of property outside territory of zoning authority—Inverse condemnation.*

(No. 2010-1196—Submitted September 6, 2011—Decided March 1, 2012.)

APPEAL from the Court of Appeals for Clinton County,

No. CA2009-07-009, 2010-Ohio-2309.

_____

SYLLABUS OF THE COURT

A property owner lacks standing to bring a regulatory-taking claim against a municipality when the affected property is outside the municipality's corporate limits.

_____

LUNDBERG STRATTON, J.

I. Introduction

{¶ 1} The issue before the court is whether a property owner has standing to compel a government entity to initiate appropriation proceedings for an alleged regulatory taking when the affected property lies outside the limits of the government entity. Because we hold that a property owner does not have standing to bring such a claim, we affirm the judgment of the court of appeals.

II. Facts and Procedural History

{¶ 2} J&M Precision Machining, Inc. ("J&M") owns 23 acres of property in Clinton and Warren Counties. Robert Clifton, appellant, testified that prior to 1989, approximately two acres of J&M's property was zoned "roadside business" and contained a house and barn. Clifton also testified that J&M had operated a machine shop on its property since the 1970s.

**{¶ 3}** In 1993, Clifton purchased approximately 99 acres of property that is contiguous to J&M's property. Clifton testified that his property is zoned for agricultural and residential use. Clifton has farmed this property since he purchased it in 1993 and has usually made a profit in doing so.

**{¶ 4}** In 1997, Clifton sold approximately two acres to J&M pursuant to a contract, which indicated that J&M would use the property for drainage for its factory operation.

**{¶ 5}** Clifton testified that in 1998, Clinton County rezoned eight acres of J&M's 23 acres to "business industrial," which included the two acres that had previously been zoned "roadside business." Clifton testified that the operation of the machine shop made no noticeable noise.

**{¶ 6}** In 2002, appellee, the village of Blanchester, annexed J&M's entire 23-acre parcel and rezoned all 23 acres for "general industrial" use. Because Clifton's property is not within the village's corporate limits, the rezoning did not apply to his 97-acre parcel.

**{¶ 7}** On March 29, 2002, Clifton filed a complaint and notice of an administrative appeal regarding the rezoning of J&M's property. Clifton alleged that the rezoning of J&M's property was unconstitutional and that the rezoning resulted in a taking of his property. The court dismissed Clifton's administrative appeal.

**{¶ 8}** The village filed a motion for summary judgment as to Clifton's remaining claims, which the court granted in part and denied in part. The trial court found that Clifton had not presented evidence that the rezoning of J&M's property was unconstitutional and granted summary judgment to the village on this issue. However, the court also concluded that Clifton had raised a genuine issue of fact as to whether the rezoning resulted in a taking of his property and denied the village summary judgment on that issue. Subsequently, Clifton voluntarily dismissed his complaint.

**{¶ 9}** On April 3, 2006, Clifton refiled a complaint alleging that the rezoning of J&M's property had resulted in a regulatory taking of his property without just compensation. Specifically, the complaint alleged that the rezoning of J&M's property interfered with the enjoyment of his property and resulted in a diminution in its value. The trial court granted summary judgment to the village, finding that the village's rezoning of J&M's property did not result in a taking of Clifton's property, because his property retained economic value.

**{¶ 10}** The court of appeals affirmed the decision that the rezoning did not result in a total taking of Clifton's property. Clinton App. No. CA2007-09-040, 2008-Ohio-4434, ¶ 12, 14. However, the court found that the trial court had failed to inquire as to whether the rezoning resulted in a partial taking under *Penn Cent. Transp. Co. v. New York* (1978), 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631. Id. at ¶ 13. Thus, the court of appeals affirmed in part and reversed in part and remanded to the trial court to undertake a partial-taking analysis under *Penn Central*.

**{¶ 11}** While the case was pending on remand, the village filed a motion for reconsideration, alleging that the court of appeals had erred in remanding the case for a *Penn Central* analysis and that Clifton lacked standing to bring a taking claim in the first place. The court of appeals granted the village's motion in part and ordered the trial court to also consider the issue of standing on remand. (Nov. 3, 2008), Clinton App. No. CA2007-09-040.

**{¶ 12}** On remand, the trial court granted summary judgment to the village, finding that Clifton had no standing to bring a takings claim and that even if he had, the rezoning of J&M's property did not result in a partial taking of Clifton's property. The court of appeals affirmed the trial court's judgment. Clinton App. No. CA2009-07-009, 2010-Ohio-2309, ¶ 7–8.

**{¶ 13}** Clifton's appeal is before this court pursuant to the acceptance of his discretionary appeal. 126 Ohio St.3d 1597, 2010-Ohio-4928, 935 N.E.2d 44.

III. Analysis

**{¶ 14}** Clifton's first proposition asserts that a nonresident contiguous property owner has standing to litigate a claim for a partial regulatory taking against an adjacent political subdivision. Clifton's second proposition asserts that a partial-taking claim based upon significant negative economic impact does not fail as a matter of law even though the regulatory action does not deprive the claimant of all economically viable use of his property. Because our resolution of the standing issue is dispositive, there is no need for us to address Clifton's second proposition regarding a takings claim.

A. Standing Generally

**{¶ 15}** "It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 469, 715 N.E.2d 1062. " 'Standing' is defined at its most basic as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' " *Ohio Pyro Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, quoting Black's Law Dictionary (8th Ed.2004) 1442. " ' "[T]he question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy * * *' as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' " ' " Id., quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 178-179, 64 O.O.2d 103, 298 N.E.2d 515, quoting *Sierra Club v. Morton* (1972), 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636, quoting *Baker v. Carr* (1962), 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663, and *Flast v. Cohen* (1968), 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947.

B. Standing to Challenge Government Action

{¶ 16} "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however, * * * a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well. The existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." (Emphasis sic; citations omitted.) *Lujan v. Defenders of Wildlife* (1992), 504 U.S. 555, 561-562, 112 S.Ct. 2130, 119 L.Ed.2d 351.

{¶ 17} In this case, the regulation (i.e., the zoning) was not directed at Clifton's property. Therefore, the analysis in *Lujan* regarding causation and redressability is instructive in determining whether Clifton has standing to bring a regulatory-taking claim against the village.

1. Causation

{¶ 18} "[I]n ruling on standing, it is both appropriate and necessary to look to the substantive issues * * * to determine whether there is logical nexus between the status asserted and the claim sought to be adjudicated * * * to assure

that [the litigant] is a proper and appropriate party to invoke" legal proceedings. *Flast v. Cohen*, 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947.

{¶ 19} "For a takings claim to prevail against a motion to dismiss in this court, the action complained of must be attributable to [a government entity]." *May v. United States* (2008), 80 Fed.Cl. 442, 445, citing *Erosion Victims of Lake Superior Regulation v. United States* (Fed.Cir.1987), 833 F.2d 297, 301. In the context of the regulatory-taking jurisprudence, whether a regulation constitutes a taking depends in large part upon the degree to which the regulation burdens private property. Generally speaking, the more severe the burden that the regulation imposes upon private property, the more likely it is that the regulation constitutes a compensable taking. *Lingle v. Chevron U.S.A., Inc.* (2005), 544 U.S. 528, 539, 125 S.Ct. 2074, 161 L.Ed.2d 876. More specifically, if zoning becomes too burdensome, it can result in a partial or total taking of the regulated property. See, e.g., *State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.*, 119 Ohio St.3d 11, 2008-Ohio-3181, 891 N.E.2d 320 (recognizing that it is possible that zoning could result in a partial or total taking of the property to which the zoning applies).

{¶ 20} However, we can find no authority for the proposition that the zoning of a property is so burdensome on an *adjacent* property that is not subject to the zoning that it results in a taking of the adjacent property. Instead, we have found some precedent that indicates that a government's regulation of property does not constitute a taking of an adjacent property.

{¶ 21} In *Fahoome v. St. Clair Shores* (Mar. 17, 1998), Mich.App. No. 194020, 1998 WL 2016580, the city of St. Clair Shores rezoned property adjacent to the plaintiff's property. The plaintiff alleged that the rezoning of his neighbor's property resulted in a taking of his property. The court held that there was no taking because the zoning was not specifically directed toward plaintiff's property.

**{¶ 22}** Further, in *Murphy v. Detroit* (1993), 201 Mich.App. 54, 506 N.W.2d 5, the city of Detroit used its eminent-domain powers to purchase and raze 1,400 residential properties, pursuant to an urban-renewal plan. Business owners located adjacent to these properties filed inverse-condemnation claims against the city, alleging that the city's actions caused a 75 percent decrease in their businesses and resulted in a de facto taking of their property.

**{¶ 23}** The court in *Murphy* recognized that the value of the plaintiffs' properties had greatly diminished because of the city's actions and that the plaintiffs had purchased their property with the expectation that their customer base would remain constant. Id. at 57. However, the court pointed out that expectations are not rights. Ultimately, the court held that there was no taking because "[d]espite the diminution in value of plaintiffs' land and buildings, resulting from defendants' change in the way they used their land, defendants took no deliberate action directed toward plaintiffs' property rights that deprived plaintiffs of possession or use of their land or buildings." Id.

**{¶ 24}** Together, *Fahoome* and *Murphy* can be interpreted to stand for the proposition that when a government's taking or regulation of property causes incidental damage to an adjacent but unregulated property, the damage is not attributable to the government actor for the purpose of supporting a takings claim.

### 2. Redressability

**{¶ 25}** Next, we examine whether a property owner has a redressable regulatory-taking claim against a municipality when the affected property is beyond the municipality's corporate limits. In order to answer this question, we again look to the substantive takings law.

**{¶ 26}** The remedy for an alleged regulatory taking is for the property owner to file a complaint seeking a writ of mandamus to compel the regulating government entity to initiate appropriation proceedings against the property

allegedly burdened by the regulation. *State ex rel. Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706.

{¶ 27} The government entity responsible for the zoning in the instant case is a village. Villages are municipalities. Section 1, Article XVIII of the Ohio Constitution ("Municipal corporations are hereby classified into cities and villages"). Municipalities have inherent and statutory authority to appropriate property, but the scope of this authority is limited. "Section 3, Article XVIII of the Ohio Constitution, commonly known as the Home Rule Amendment, gives municipalities the 'authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.' " *Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, ¶ 7. A municipality's home-rule authority includes the power of eminent domain. *State ex rel. Bruestle v. Rich* (1953), 159 Ohio St. 13, 14, 50 O.O. 6, 110 N.E.2d 778. However, aside from acquiring property to operate a public utility that serves its own residents, a municipality has no authority to exercise its inherent eminent-domain powers beyond its corporate limits. *Britt v. Columbus* (1974), 38 Ohio St.2d 1, 67 O.O.2d 1, 309 N.E.2d 412, at paragraph one of the syllabus.

{¶ 28} The General Assembly has also provided municipalities with statutory authority to use eminent-domain powers to acquire property that lies outside the municipality's corporate limits "when reasonably necessary," but only for certain enumerated public purposes. R.C. 719.02 and 719.01. However, none of the enumerated purposes listed in R.C. 719.01 include appropriating property for an alleged regulatory taking.

{¶ 29} Thus, a municipality has no authority to initiate appropriation proceedings in response to a property owner's complaint in mandamus alleging a regulatory-taking claim if the affected property lies outside the municipality's limits. A municipality's liability for a regulatory taking is limited to the property

that it is authorized to regulate, i.e., the property within its limits. Accordingly, a property owner has no redressable regulatory-taking claim against a municipality when the affected property lies outside the municipality's corporate limits.

## IV. Conclusion

{¶ 30} Applying our holding to the facts of this case, we conclude that Clifton lacks standing to bring a takings claim against the village. However, we emphasize that we do not hold that an adjoining property owner may never have standing. Instead, we hold that a property owner lacks standing under the facts and circumstances presented here.

{¶ 31} The zoning at issue applies to J&M's property, not Clifton's. Therefore, the zoning imposes no limitation on Clifton's use of his property whatsoever. Further, the alleged diminution in value of Clifton's property is not a direct result of the village's zoning, but instead is caused by J&M's use of its property, as allowed by the rezoning. Finally, the rezoning that changed part of J&M's property from "business industrial" to "general industrial" merely expanded a similar, existing, permitted use. Under these particular facts, we hold that there is an insufficient nexus between the rezoning of J&M's property and the alleged diminution in value of Clifton's adjacent property to indicate that Clifton is a proper party to bring a regulatory-taking claim.

{¶ 32} Furthermore, because Clifton's property is outside the village limits, the village has no authority to appropriate his property for an alleged regulatory taking. Accordingly, Clifton also has no redressable claim against the village for a regulatory taking.

{¶ 33} Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 34} This is a difficult case. The majority opinion has some logic on its side, and the end result is hardly unconscionable, but I am concerned that the resolution of this case will make it harder for future plaintiffs with legitimate complaints to force the government to initiate appropriation actions in similar circumstances.

{¶ 35} The majority reaches three conclusions: (1) the city of Blanchester's zoning change "imposes no limitation on Clifton's use of his property whatsoever" and, therefore, Clifton cannot show a nexus between the zoning change and a diminution in the value of his property, (2) Blanchester cannot appropriate Clifton's property, because it is not in Blanchester, and, therefore, (3) Clifton does not have standing to initiate an inverse-condemnation proceeding against Blanchester. I will address each of these conclusions in turn.

*No Limitation*

{¶ 36} It is clear that Blanchester's zoning change does not directly limit Clifton's use of his property. It cannot, because it is outside the Blanchester village limits. But it can indirectly limit Clifton's use, and it can cause a diminution of value in his property. It is obvious that it is possible for a zoning change to diminish the value of adjacent property within a municipality, even if indirectly. So naturally it is possible for a zoning change to diminish the value of adjacent property that is in a different political subdivision. I dispute the majority's claim that there is "no limitation," because it is possible that certain uses of the property are less feasible and that certain uses have less economic value than before the zoning change was made.

{¶ 37} The Supreme Court of the United States has stated that "regulatory takings challenges are governed by the standards set forth in *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104 [98 S.Ct. 2646, 57 L.Ed.2d 631] (1978)."

*Lingle v. Chevron U.S.A., Inc.* (2005), 544 U.S. 528, 538, 125 S.Ct. 2074, 161 L.Ed.2d 876. The court in *Lingle* stated that the primary factors to consider when evaluating regulatory-takings claims are " '[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations.' " Id. at 538–539, quoting *Penn Cent.* at 124. These inquiries are aimed at identifying "regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain. Accordingly, each of these tests focuses directly upon the severity of the burden that government imposes upon private property rights." *Lingle* at 539. A "*Penn Central* inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." Id. at 540.

{¶ 38} It is quite clear that the majority in this case has engaged in no such analysis. It may be difficult for Clifton to show that the zoning change has interfered with his legitimate property interests, but he should have the opportunity to establish that his rights under the federal or Ohio constitution have been infringed.

*Blanchester Can't Appropriate*

{¶ 39} This is a troubling aspect of the case but one that ought not prevent this court from doing justice to the parties. It is obvious, as the majority opinion discusses, that Blanchester does not have the authority to appropriate property that is not within its jurisdiction. A plausible solution in this situation, if Blanchester is shown to have effected a taking, is to require Blanchester to buy the affected property or pay the amount of diminution. That remedy would fall within the concept of a virtual taking. Relying on United States Supreme Court precedent, the Court of Appeals of Utah has written that "if a regulation falls short of eliminating all economically beneficial use of land, an analysis of a complex of

factors indicates whether the interference is so great that a virtual taking has nonetheless occurred." *Arnell v. Salt Lake Cty. Bd. of Adjustment* (2005), 2005 Utah App. 165, 112 P.3d 1214, ¶ 17, citing *Palazzolo v. Rhode Island* (2001)*,* 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592. The factors to be considered include " '[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations * * * [and] the character of the governmental action.' " Id., quoting *Penn Cent.,* 438 U.S. at 124, 98 S.Ct. 2646, 57 L.Ed.2d 631. "These inquiries are informed by the purpose of the Takings Clause, which is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *Palazzolo,* 533 U.S. at 617–618, quoting *Armstrong v. United States* (1960), 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554.

**{¶ 40}** In this case, Clifton is seeking to avoid bearing alone the burden of a zoning change and the effect that it has on his property. Whether he will be able to prove a taking or diminution in value is beside the point at this time. We should analyze the various factors that the United States Supreme Court has determined bear on the issue and decide whether Blanchester has effected a virtual taking. If it has, we should order an equitable remedy and require Blanchester to make Clifton whole, either by buying his property or by paying him the amount of diminution. The end result would be the same as in an appropriation action—the government entity (Blanchester) would own the property, and the affected property owner (Clifton) would be compensated for harm suffered, whether directly or indirectly inflicted, at the hand of a governmental entity (Blanchester).

*Standing*

**{¶ 41}** The majority ultimately concludes that Clifton lacks standing because his problem is not redressable by an appropriation action because

12

Blanchester cannot appropriate property outside its jurisdiction. Given the current state of the law, that is a sound conclusion. But ought not the law seek to do equity in such a circumstance? If a zoning change really does diminish the value of an adjacent property, then it diminishes the value whether the adjacent property is in the same or a different political subdivision. Why would the law countenance a remedy in one instance but not the other? All of the involved parties are in Ohio. Ought not the law of Ohio provide a remedy for an aggrieved landowner even if he lives in a different political subdivision from the one whose zoning change diminishes the value of his property?

{¶ 42} Courts have considered similar issues and concluded that residents of adjacent political subdivisions can have standing for some purposes. For instance, in *Scott v. Indian Wells* (1972), 6 Cal.3d 541, 549, 99 Cal.Rptr. 745, 492 P.2d 1137, the Supreme Court of California stated that a political subdivision considering a zoning change "owes adjoining landowners who are not city residents a duty of notice to the extent given similarly situated city residents, a duty to hear their views, and a duty to consider the proposed development with respect to its effect on *all* neighboring property owners. We are also satisfied that adjoining landowners who are not city residents may enforce these duties by appropriate legal proceedings and have standing to challenge zoning decisions of the city which affect their property." (Emphasis sic.) In *Cresskill v. Dumont* (1954), 15 N.J. 238, 247, 104 A.2d 441, the Supreme Court of New Jersey stated that a political subdivision "owes a duty to hear any residents and taxpayers of adjoining municipalities who may be adversely affected by proposed zoning changes and to give as much consideration to their rights as they would to those of residents and taxpayers of [itself]. To do less would be to make a fetish out of invisible municipal boundary lines and a mockery of the principles of zoning." See also *Koppel v. Fairway* (1962), 189 Kan. 710, 371 P.2d 113, paragraph one of

the syllabus; *Constr. Industry Assn. of Sonoma Cty. v. Petaluma* (C.A.9, 1975), 522 F.2d 897, 905.

{¶ 43} I am persuaded that Clifton's problem is redressable. The concept of a regulatory taking or a virtual taking and our authority when sitting in equity are broad enough to fashion a remedy for Clifton. By concluding that Clifton has no standing and consequently that property owners can never have standing when a political subdivision other than the one where their property is located makes a zoning change, this court is giving a green light to political subdivisions to make zoning changes that unduly affect property owners in adjacent cities and towns. Surely this court does not want that to happen.

{¶ 44} I conclude that it is possible for Clifton to show that the Blanchester zoning change limits his use of his property, that even though Blanchester cannot appropriate Clifton's property, it can compensate him as if it had appropriated his property, and therefore that Clifton raises an issue that is redressable. I conclude that Clifton has standing. I would allow the case to move forward on its merits.

{¶ 45} I dissent.

_____

Fowler, Demos, & Stueve, William G. Fowler, and Gregory J. Demos, for appellant.

Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere, and Robert S. Hiller, for appellee.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, and Laura Eddleman Heim, Deputy Solicitor, urging affirmance for amicus curiae, state of Ohio.

_____