[Cite as *In re N.G.*, 2014-Ohio-720.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: N.G. | : | APPEAL NOS. C-130684 |
| | | C-130685 |
| | : | TRIAL NO. F05-2190Z |
| | : | *O P I N I O N.* |

Civil Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: February 28, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ernest W. Lee, Jr.*, Assistant Prosecuting Attorney, for Appellant Hamilton County Department of Job and Family Services,

*Nathan Bell*, for Appellant Guardian Ad Litem,

*Erik W. Laursen*, for Appellee Samuel McKinney.

Please note: this case has been removed from the accelerated calendar.

**DeWine, Judge.**

{¶1}     This is an appeal from a custody determination involving a minor child, N.G.  The Hamilton County Department of Job and Family Services ("HCJFS") and the guardian ad litem ("GAL") for N.G. appeal the trial court's judgment that denied HCJFS's motion for permanent custody and granted legal custody to Donna Carter, N.G.'s aunt.  HCJFS and the GAL contend that the trial court overstepped its bounds when it rejected the magistrate's decision that permanent custody should be granted to HCJFS.  Because it is not clear that the trial court considered all the necessary factors to determine N.G.'s best interest, we reverse the judgment and remand the matter for further proceedings.

{¶2}     N.G. is the biological daughter of Talisha.  Samuel McKinney is N.G.'s father.  Shortly after her birth on August 23, 2009, HCJFS received interim custody of N.G.  She was placed in a foster home with other biological siblings.  Following a hearing on May 26, 2010, N.G. was adjudicated dependent and placed in the temporary custody of HCJFS.  At the May 26 hearing, HCJFS acknowledged that Ms. Carter, Mr. McKinney's sister, had expressed an interest in seeking legal custody of N.G.  That same day, HCJFS filed a motion seeking permanent custody.

{¶3}     Ms. Carter filed a petition for legal custody of N.G. in January 2011.  Both Mr. McKinney and Talisha stated that if Talisha was not given custody of N.G., their preferences would be for Ms. Carter to have custody.  Throughout the pendency of HCJFS's motion, Ms. Carter attended and participated in the hearings.  She was allowed to visit with N.G., until the visits were suspended in August 2011, due to an incident in which HCJFS alleged Ms. Carter acted "erratically" because the caseworker and N.G.'s foster mother had questioned whether she had an appropriate car seat for N.G. and due

to a criminal charge that had been filed against Ms. Carter. The criminal charge was dismissed and expunged shortly after it was filed. Despite the magistrate's instruction to the caseworker to resume visits between Ms. Carter and N.G., it is not clear how many—if any—visits took place.

{¶4} Following the disposition hearing, the magistrate issued a decision, concluding that it was in the best interest of N.G. to be committed to the permanent custody of HCJFS, thereby divesting N.G.'s parents of all parental rights. R.C. 2151.011(A)(32). Mr. McKinney objected to the magistrate's decision granting permanent custody, arguing instead that custody should have been given to Ms. Carter. Ms. Carter did not file objections to the decision.

{¶5} In reviewing the record, the trial court focused its attention on what it saw as HCJFS's lack of cooperation in evaluating Ms. Carter's request for custody. The court cited HCJFS's inaction in setting up visits between Ms. Carter and N.G. and referred to a study that found that placement with biological relatives was preferred over long-term foster care. The trial court rejected the magistrate's decision, denied permanent custody to HCJFS, and ordered that legal custody be granted to Ms. Carter. The trial court also granted protective supervision to HCJFS to facilitate the successful transition of N.G. from foster care to her aunt's legal custody.

{¶6} The GAL's first assignment of error is that the trial court erred in proceeding upon the claims of a nonobjecting party where Mr. McKinney did not have standing to assert the claims of Ms. Carter. HCJFS also challenged Mr. McKinney's standing within its appeal.

{¶7} Appellants challenge Mr. McKinney's "standing" to object to the magistrate's decision and cite prior decisions of this court dealing with the jurisdictional requirement of standing to appeal. *See In re A.W.*, 1st Dist. Hamilton No. C-120787,

2013-Ohio-909; *In re T.W.*, 1st Dist. Hamilton No. C-130080, 2013-Ohio-1754. They misunderstand the standing inquiry. Standing deals with whether a party has sufficient interest to invoke the jurisdiction of the court. *Fed. Home Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 22-23. At the trial level, it is a threshold requirement that must be met *by the plaintiff. Id.,* citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570-571, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Similarly, a party who attempts to appeal a judgment must meet standing requirements to invoke the jurisdiction of the appellate court. *Ohio Contract Carriers Assn. v. Public Util. Comm. of Ohio*, 140 Ohio St. 160, 161, 42 N.E.2d 758 (1942). One of these requirements is that a party who seeks to appeal must assert his own rights. The failure to meet this requirement was the basis for our decisions in *A.W.* and *T.W.*

{¶8} Here, Mr. McKinney did not institute the proceeding below. Rather, HCJFS filed the motion, and Mr. McKinney was given notice of the proceeding because he was a party under Juv.R. 2(Y). It is axiomatic that those who are not plaintiffs "need not demonstrate standing because they are not bringing suit against anyone." *Lord v. BAC Home Loans Servicing, L.P.*, C.D.California No. CV 11-00442 CAS(OPx), 2011 U.S. Dist. LEXIS 153543 (July 8, 2011), fn. 1. The issue here is not one of standing, but rather whether Mr. McKinney could properly file objections to the magistrate's decision once the trial court's jurisdiction had been properly invoked. And that question is answered by the Ohio Rules of Juvenile Procedure. Juv.R. 40(D)(3)(b)(i) provides that "[a] party may file written objections to a magistrate's decision[.]" Mr. McKinney, as N.G.'s father, was clearly a party to the proceedings. *See* Juv.R. 2(Y). Further, a trial court needs neither the objections of a party nor the previous analysis of the magistrate in order to review a matter and make its own independent decision. *See* Juv.R. 40(D)(4)(b). It follows, then, that a trial court can conduct an independent review and consider issues

4

raised by a party whose rights are not being expressly defended in the objections. The GAL's first assignment of error is overruled.

{¶9} HCJFS's sole assignment of error is that the trial court's decision amounted to an abuse of discretion because the court misapplied the law. Likewise, in her second assignment of error, the GAL asserts that the trial court improperly applied the best-interest factors of R.C. 2151.414.

{¶10} As an initial matter, HCJFS takes issue with the trial court's consideration of arguments about Ms. Carter's pursuit of legal custody, despite the fact that Ms. Carter herself did not object to the magistrate's decision. But Ms. Carter was involved throughout the proceedings, and testimony about her suitability to be N.G.'s legal custodian was relevant to the issue of whether permanent custody was in N.G.'s best interest. *See* R.C. 2151.414(D)(1)(d).

{¶11} While Ms. Carter's fitness to be N.G.'s legal custodian was relevant to the court's decision regarding permanent custody, it was not the only relevant issue. Before it could grant permanent custody to HCJFS, the trial court was required to determine by clear and convincing evidence that permanent custody was in the best interest of N.G. *See* R.C. 2151.414(B); *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Under R.C. 2151.414(D)(1), to determine a child's best interest,

> the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard to the maturity of the child;

5

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

"There is not one element that is given greater weight than the others pursuant to the statute." *Schaefer* at ¶ 56.

{¶12} It is clear from the court's decision that it considered the R.C. 2151.414(D)(1)(d) factor, concluding that N.G.'s need for legally secure permanent placement could be achieved by granting legal custody to Ms. Carter. The decision also considered N.G.'s custodial history. *See* R.C. 2151.414(D)(1)(c). Missing from the decision, however, was any indication that the court considered N.G.'s interaction with her parents, siblings, and foster caregivers, or her wishes as expressed by the GAL. *See* R.C. 2151.414(D)(1)(a)-(b). While a court does not have to enumerate each factor under R.C. 2151.414, "there must be some indication on the record that all of the necessary factors were considered." *In re G.B.*, 10th Dist. Franklin No. 04AP-1024, 2005-Ohio-3141, ¶ 17. For this reason, we sustain HCJFS's sole assignment of error and the GAL's second assignment of error. We, therefore, reverse the judgment of the trial court and remand the matter for consideration of the factors.

{¶13} Although we must remand this cause for further proceedings, we note that N.G. has already spent over four years in foster care without a final custody determination. In matters of child custody, it is imperative for courts to effectuate a speedy resolution of all claims so that the child is afforded a stable and permanent

home. For these reasons, we urge the trial court to resolve N.G.'s case as quickly as possible.

Judgment reversed and cause remanded.

**DINKELACKER, P.J.,** concurs.
**FISCHER, J.,** concurs separately.

**FISCHER, J.,** concurring separately.

{¶14} Although I concur in the result, I write separately because I disagree with the majority's reasoning in disposing of the GAL's first assignment of error. The GAL relies on our decisions in *In re A.W.*, 1st Dist. Hamilton No. C-120787, 2013-Ohio-909, and *In re T.W.*, 1st Dist. Hamilton No. C-130080, 2013-Ohio-1754, to argue that McKinney did not have standing to assert the rights or claims of Carter when objecting to the magistrate's decision recommending permanent custody to HCJFS. I agree with the GAL in this respect. Although McKinney had the right to object to the magistrate's decision, as he was clearly a party to proceedings, McKinney's objections did not contain any argument regarding the affect the magistrate's decision would have on his residual parental rights. *See T.W.* at ¶ 8. Instead, McKinney's objections focused on the rights of Carter and her legal-custody petition, which he had no standing to raise. *See id.*

{¶15} We have repeatedly held that one party can neither object nor appeal by raising arguments on behalf of another person's rights. *See In re A.W.*; *In re T.W.* McKinney lacked standing to object and raise arguments only on behalf of Carter, and not on his own behalf. *See, e.g., Moore v. City of Middletown*, 133 Ohio St.3d 55, 60, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 21, quoting *Clifton v. Village of Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 15 (" 'Standing' is defined at its most basic as '[a] party's right to make a legal claim or seek judicial

enforcement of a duty or right.' ").  McKinney asserted no personal stake, and thus lacks standing.  *See id.*

{¶16}  I nevertheless concur with the majority that the GAL's first assignment of error should be overruled because the trial court had the authority to grant legal custody to Carter even though Carter had not objected to the magistrate's decision.  *See* Juv.R. 40(D)(4)(b) ("Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification.  A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate.").

Please note:

The court has recorded its own entry on the date of the release of this opinion.