Lanzinger, J.,
concurring in part and dissenting in part.
*19 {¶ 57} Although I agree with the lead opinion that appellants Robert L. Walgate Jr., Sandra Walgate, Joe Abraham, David Zanotti, and the American Policy Roundtable have failed to establish standing and with the decision to decline to require courts to provide a plaintiff an opportunity to amend a complaint before a case is dismissed for lack of standing, I do not agree that appellant Frederick Kinsey has sufficiently alleged standing to survive appellees’ motion to dismiss. I therefore dissent in part and would affirm the Tenth District Court of Appeals’ judgment dismissing this case in its entirety.

I. Analysis

A. Kinsey lacks standing to bring this claim

{¶ 58} Although Kinsey claims that he was denied equal protection, his claim is simply one item in a laundry list of challenges compiled by appellants in a transparent attempt to have Article XV, Section 6(C) of the Ohio Constitution and the implementing statutes of the casino amendment invalidated simply because they do not want casino gambling in Ohio.[2] Certain appellants allege that the negative effects of gambling constitute injury in fact. But Kinsey alleges only that he “would engage in casino gaming in Ohio but for the provisions of’ the amendment to Ohio’s Constitution that “grant[s] a special and exclusive privilege to engage in casino gaming in Ohio to two gaming corporations.” The complaint sets forth one claim titled “Grant of Monopoly,” which restates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and declares that Ohio’s casino-gaming amendment and statutes grant a monopoly that violates the Fourteenth Amendment. But there is no allegation directly connecting Kinsey to this claim. In the prayer for relief, Kinsey requests a declaration that Ohio’s casino-gaming amendment and statutes violate the Fourteenth Amendment to the United States Constitution. From the sum total of these allegations, the lead opinion concludes that Kinsey has standing. The absurdity of this position is obvious.
{¶ 59} The constitutional amendment that authorizes casino gambling was a policy choice instituted by initiative and voted on by the public. The direct consequence of the relief Kinsey seeks — declaring the Ohio constitutional provision on casino gaming unconstitutional under the Fourteenth Amendment to the United States Constitution — would do through the court what opponents to gambling were unable to do at the ballot box.
*20 {¶ 60} Of course the voters themselves retain the power to decide to prohibit casino gambling by repealing the constitutional amendment. Article II, Section 1 of the Ohio Constitution provides:
The legislative power of the state shall be vested in a General Assembly consisting of a senate and house of representatives but the people reserve to themselves the power to propose to the General Assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided. They also reserve the power to adopt or reject any law, section of any law or any item in any law appropriating money passed by the General Assembly,- except as hereinafter provided; and independent of the General Assembly to propose amendments to the constitution and to adopt or reject the same at the polls. The limitations expressed in the constitution, on the power of the General Assembly to enact laws, shall be deemed limitations on the power of the people to enact laws.
The Constitution thus provides for a procedure by which the people may amend the Constitution or enact laws.. In allowing Kinsey’s lawsuit to continue, the majority allows one individual who has insufficiently alleged harm or redressability, i.e., who lacks standing, to override the will of the people of Ohio.
{¶ 61} Indeed, standing “embodies general concerns about how courts should function in a democratic system of government.” State ex rel. Ohio Academy of Trial Lawyers v. Sheward, 86 Ohio St.3d 451, 469, 715 N.E.2d 1062 (1999). Four justices now allow the will of the people to be questioned based on the mere assertion by one individual that he “would engage” in casino gambling, without requiring assertion of further facts showing that he indeed is ready and able to do so. This attempt to usurp the will of the people is an end-run around the legislative process and, although disguised as a procedural question of law, should not be countenanced.
{¶ 62} Under our traditional standing principles, a plaintiff must show, at a minimum, that he or she has suffered “ ‘(1) an injury that is (2) fairly traceable to the defendant’s allegedly unlawful conduct, and (3) likely to be redressed by the requested relief.’” See ProgressOhio.org, Inc. v. JobsOhio, 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, ¶ 7, quoting Moore v. Middletown, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22. Kinsey has not met these criteria. He has not sufficiently shown that he has suffered an injury, and he has not shown that the relief he requests would redress his alleged injury.

*21
B. The complaint does not sufficiently allege an injury

{¶ 63} According to the lead opinion, “Kinsey’s allegation that he would engage in casino gaming but for the bar in Article XV, Section 6(C) of the Ohio Constitution, is a sufficient allegation of injury to withstand a Civ.R. 12(B)(6) motion to dismiss.” Lead opinion at ¶ 47.
{¶ 64} The lead opinion relies upon federal cases to bolster its conclusion that Kinsey has standing, including Northeastern Florida Chapter of Associated Gen. Contrs. of Am. v. Jacksonville, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), and Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd., 172 F.3d 397 (6th Cir.1999). Both cases are distinguishable, as discussed below. The lead opinion also relies on Lujan v. Defenders of Wildlife, 504 U.S. 555,112 S.Ct. 2130,119 L.Ed.2d 351 (1992), a case that specifically considered whether a plaintiff had properly invoked federal jurisdiction, in stating that “at the pleading stage, we presume that general allegations embrace the specific facts necessary to support a claim.” Lead opinion at ¶ 47.
{¶ 65} But in presuming the existence of additional facts, the lead opinion presupposes the existence of an injury that is not alleged, even generally. According to the lead opinion, “the injury here is the denial of equal treatment resulting from the limitations imposed by Article XV, Section 6(C) of the Ohio Constitution, [2009 Am.Sub.H.B. No. 1 (“H.B. 1”), 2010 Am.Sub.H.B. No. 519 (“H.B. 519”), and 2011 Sub.H.B. No. 277 (“H.B. 277”)]. Lead opinion at ¶49. This language is nowhere in the complaint. Instead, the lead opinion pulls this “denial of equal treatment” language from the United States Supreme Court’s decision in Northeastern. Id. at 666. The lead opinion acknowledges that in Lac Vieux, a case that was before the Sixth Circuit for review of a summary judgment, the Sixth Circuit explained that the district court had correctly noted that “ ‘the standing issue hinges on whether [the plaintiff] has sufficiently alleged that it is able and ready to bid for a casino license.’ ” (Emphasis added.) Id. at 404. Notably, the court used the word “alleged,” not “proved,” although it was reviewing a summary judgment.
{¶ 66} The amended complaint in this case alleges simply that Kinsey “is being deprived of the right to exercise the trade or business of casino gaming in Ohio” by Article XV, Section 6(C) of the Ohio Constitution and that he “would engage in casino gaming in Ohio but for” Article XV, Section 6(C) of the Ohio Constitution, H.B. 1, H.B. 519, and H.B. 277, which “grant a special and exclusive privilege to engage in casino gaming in Ohio to two gaming corporations.” There is absolutely no allegation of an injury that the requested remedy can redress.
{¶ 67} The complaint here avers nothing about actions that Kinsey took, expenditures that he made, or any other facts showing how he was injured by the *22 amendment or that he was ready and able to participate in casino gaming. “ ‘[I]n ruling on standing, it is both appropriate and necessary to look to the substantive issues * * * to determine whether there is [a] logical nexus between the status asserted and the claim sought to be adjudicated * * * to assure that [the litigant] is a proper and appropriate party to invoke’ legal proceedings.” (Emphasis added.) Clifton v. Blanchester, 131 Ohio St.3d 287, 2012-0hio-780, 964 N.E.2d 414, ¶ 18, quoting Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Here, there are no allegations to support a logical nexus between Kinsey’s status as someone who would like to operate a casino and his claim that the casino-gaming amendment and statutes should be struck down for granting a monopoly that violates equal protection. Additionally, “standing depends on whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case.” Progress-Ohio.org, Inc., 139 Ohio St.3d 520, 2014-Ohio-2382,13 N.E.3d 1101, at ¶ 7. But the complaint is devoid of allegations that Kinsey has a personal stake in the outcome of the controversy different from any other member of the public.
{¶ 68} The lead opinion’s conclusion that Kinsey has standing is based on unsupported, incomplete, and conclusory allegations and allows his challenge to a constitutional amendment to go forward on the slender reed of what he says he “would” do. There is no factual allegation that he has done anything or is capable of doing anything to further this hope. The lack of a logical nexus between the status he asserts and the claim he seeks to be adjudicated is especially clear when the significant financial, experiential, and other resources required to establish and operate a casino are considered. Under the logic of the lead opinion, every person in the world has standing to state a claim identical to Kinsey’s, as long as the complaint contains the simple statement that he or she would engage in casino gaming in Ohio but for the current state of the law. Such an expansive interpretation of pleading effectively eliminates the need for and purpose of Ohio’s standing doctrine.
{¶ 69} I would instead hold that Kinsey’s mere statement of aspiration is insufficient to allege actual harm or the possibility that the harm could be redressed. The factual allegations of the complaint must be accepted as true when a court reviews a dismissal on a Civ.R. 12(B)(6) motion. Mitchell v. Lawson Milk Co., 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). But in the first instance, there must be factual allegations from which the court can make all reasonable inferences. If it is beyond doubt that Kinsey can prove no set of facts entitling him to relief, his claim must be dismissed. See O’Brien v. Univ. Community Tenants Union, Inc., 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.
*23 {¶ 70} The lead opinion notes that the plaintiff in Lac Vieux “alleged that it owned and operated another casino in Michigan, had arranged for development of a casino in Detroit, had selected a site for the casino, and was ready and able to submit the requisite information for a casino-development proposal, along with the required fees.” Lead opinion at ¶ 47, citing Lac Vieux, 172 F.3d at 404-405. While it is true that Lac Vieux involved a case at the summary-judgment stage, that case does not stand for the proposition that a mere conclusory statement is sufficient to survive a motion to dismiss. The Lac Vieux case was able to proceed to the summary-judgment stage precisely because the plaintiff set forth factual allegations from which it could be afforded all reasonable inferences. Unlike the plaintiffs in Lac Vieux, Kinsey failed to set forth any further allegations. His statement is accordingly an insufficient allegation of injury to withstand a Civ.R. 12(B)(6) motion to dismiss.

C. Any alleged injury would not be redressed by the requested relief

{¶ 71} Moreover, even if we were to assume that sufficient facts have been pled asserting an injury to Kinsey, he has not alleged that his injury is likely to be redressed by the requested relief. Kinsey alleges that he is unable to operate a casino facility in Ohio because the Ohio Constitution grants a monopoly[3] to certain gaming companies. He requests a declaration that Article XV, Section 6(C) violates equal protection, but such a declaration would rescind the limited grant of authority that the provision grants rather than allow all potential operators to conduct casino gambling in the state. It follows then that Kinsey’s requested relief would not redress his injury, i.e., his inability to operate a casino under current Ohio law. Instead, the requested relief would simply eliminate the ability of anyone to operate a casino. The lead opinion- concludes that no redressability problem exists, stating, “While a declaration that those provisions violate the Fourteenth Amendment to the United States Constitution would not grant the general public permission to conduct casino gambling in Ohio, it would eliminate the current inequality in the opportunity to obtain that benefit. Accordingly, we conclude that Kinsey’s allegation is sufficient to meet the redressa-bility element of standing.” Lead opinion at ¶ 49.
{¶ 72} This concoction is akin to throwing the baby out with the bathwater and ignores Kinsey’s sole allegation that he “is being deprived of the right to exercise” a casino-gaming business and “would engage in casino gaming” if he could. Extrapolating a disingenuous pleading into an injury and remedy to grant standing on the basis of a constitutional inequality is pretzel logic, twisting the straight line of standing analysis into something unrecognizable.
*24 {¶ 73} In Northeastern, a case on which the lead opinion relies, the United States Supreme Court addressed standing in an equal-protection case challenging a city ordinance requiring that funds be set aside to award city contracts to minority-owned businesses. 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586. There, the court concluded that “[t]o establish standing, * * * a party challenging a set-aside program like Jacksonville’s need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis.” Id. at 666. Notwithstanding the use of the phrase “to establish standing,” the court concluded that the petitioner “sufficiently alleged both that the city’s ordinance is the ‘cause’ of its injury and that a judicial decree directing the city to discontinue its program would ‘redress’ the injury.” Id., fn. 5. In contrast to Kinsey’s requested relief in this case, the requested termination of the set-aside program in Northeastern would have opened the city-contract-bidding process to all contractors, including the petitioner, which alleged that its members “regularly bid on and perform construction work for the City of Jacksonville.” Id. at 659. Here, however, Kinsey’s requested relief would deprive everyone of the ability to operate a casino, even Kinsey, and there is no additional allegation to support the weak aspirational thought that he would engage in casino gaming if it were open to him.
{¶ 74} The theory of redressability devised by the lead opinion does not solve any problem identified in Kinsey’s amended complaint. Had Kinsey pled that because the opportunity to operate a casino is not open to all, it should not be open to any, the lead opinion’s conclusion might be appropriate. However, that is not his position. Nor would that assertion square with his allegation of injury. By joining with the other appellants in the underlying complaint, it is apparent that his goal is to do away with all casino gaming in Ohio, in spite of the will of the people. The court accommodates this effort by giving Kinsey the legitimacy of standing to proceed. I cannot agree with this conclusion.

II. Conclusion

{¶ 75} Because our state precedent requires a showing of actual injury and redressability, I would hold that Kinsey’s bare, unsupported allegation that he “would engage in casino gaming in Ohio” if he were permitted to do so is insufficient to establish standing in this case, and therefore, I respectfully dissent from the court’s judgment with regard to him, and I would affirm the judgment of the Tenth District Court of Appeals in its entirety.
O’Connor, C.J., and DeGenaro, J., concur in the foregoing opinion.
*25 Black, McCuskey, Souers & Arbaugh, Thomas W. Connors, and James M. Wherley, for appellants.
Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, and Stephen P. Carney, Deputy Solicitor, for appellees Governor John R. Kasich, Ohio Casino Control Commission, Ohio Lottery Commission, and Tax Commissioner Joseph W. Testa.
Calfee, Halter & Griswold, L.L.P., Christopher S. Williams, James F. Lang, Matthew M. Mendoza, Alexander B. Reich, and Lindsey E. Sacher, for appellees Rock Ohio Caesars, L.L.C., Rock Ohio Caesars Cleveland, L.L.C., and Rock Ohio Caesars Cincinnati, L.L.C.
Ice Miller, L.L.P., Matthew L. Fornshell, John H. Oberle, and Albert G. Lin, for appellees Central Ohio Gaming Ventures, L.L.C., and Toledo Gaming Ventures, L.L.C.
Dinsmore & Shohl, L.L.P., and Alan H. Abes, for appellee Thistledown Racetrack, L.L.C.
Taft, Stettinius & Hollister, L.L.P., Charles R. Saxbe, James D. Abrams, Irv Berliner, and Celia M. Kilgard, for appellees Northfield Park Associates, L.L.C., Lebanon Trotting Club, Inc., MTR Gaming Group, Inc., and PNK (Ohio), L.L.C.
Porter, Wright, Morris & Arthur, L.L.P., Tami Hart Kirby, William G. Deas, and L. Bradfield Hughes, urging affirmance for amici curiae the Dayton Chamber of Commerce, the Youngstown/Warren Regional Chamber, the Seafarers Entertainment and Allied Trades Union, the Affiliated Construction Trades Ohio Foundation, and the Lebanon City School District.
Paul Langon Cox III, urging affirmance for amicus curiae the Fraternal Order of Police of Ohio, Inc.

. It defies logic for an individual who says he wants to be a casino operator to hitch his wagon to an amended complaint in which all the other plaintiffs seek to curtail or overturn the amendment and statutes.

. In 2015, the voters passed an antimonopoly amendment, see Article II, Section le of the Ohio Constitution; however, that amendment has no effect on the case before us.